# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1039

_____

United States of America,

        Appellee,

v.

Harry Black Bear,

        Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
District of South Dakota

_____

Submitted: June 12, 2008
Filed: September 12, 2008

_____

Before SMITH and GRUENDER, Circuit Judges, and ROSENBAUM,[1] District Judge.

_____

GRUENDER, Circuit Judge.

The Government filed a petition to revoke Harry Black Bear's supervised release. At his revocation hearing, the district court[2] revoked Black Bear's supervised

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

release and sentenced him to twenty-four months' imprisonment. On appeal, Black Bear argues that the district court lacked sufficient identification evidence and that it improperly considered hearsay evidence. For the following reasons, we affirm.

## I.    BACKGROUND

In 2002, Black Bear pled guilty to assault with a dangerous weapon in Indian country, a violation of 18 U.S.C. §§ 113(a)(3) and 1153. Black Bear received a sentence of sixty-three months' imprisonment and three years' supervised release. Black Bear's supervised release, which began on April 14, 2007, included the conditions that Black Bear: (1) "shall not commit another federal, state, local or tribal crime"; (2) "shall not consume any alcoholic beverages or frequent establishments whose primary business is the sale of alcoholic beverages"; and (3) "shall notify the probation officer at least ten days prior to any change in residence or employment."

On October 6, 2007, officers of the Rapid City, South Dakota Police Department found Black Bear consuming alcohol in a public place. Black Bear was admitted to Rapid City's alcohol detoxification center. While he was in that center, he talked with Amy Vermeulen, his federal probation officer, on the telephone and admitted to her that he had consumed alcohol. Vermeulen's supervisor also informed her that Black Bear was charged with "open container, otherwise known as consuming alcohol in a public place." Black Bear pled guilty to an open container state charge arising from this incident. He was sentenced to time served and court costs. On October 11, 2007, Vermeulen discovered from Black Bear's former supervisor that Black Bear had been fired from his job a couple of weeks earlier. Black Bear failed to inform Vermeulen of this change in his employment status.

On October 25, 2007, Rapid City Police Officer Andy Becker was dispatched to an apartment to investigate a possible assault by Black Bear of Carey Middleton, his girlfriend. Middleton answered the door, and Officer Becker noticed her face was

red and her lip was swollen. Officer Becker also noticed a table out of place and a lamp shade lying on the floor away from the lamp, which was also on the floor. Black Bear was not at the apartment, but Middleton's father and daughter were there. Officer Becker observed a red mark on Middleton's father's face. After Officer Becker interviewed Middleton and her father about the incident, Officer Becker left the apartment. He was then dispatched to the same apartment a few hours later. This time, Black Bear was outside of the apartment building with a police sergeant. Black Bear approached Officer Becker with his hands behind his back and told Officer Becker that he wanted to turn himself in to the authorities. Officer Becker observed that Black Bear had no injuries on his body and that he smelled of alcohol and appeared intoxicated. During the ride to the jail, Black Bear told Officer Becker that Middleton had slapped him first and he "just retaliated."

The Government's petition to revoke Black Bear's supervised release alleged that Black Bear violated several conditions of his supervised release: (1) he committed the offense of simple assault on or about October 25, 2007; (2) he consumed alcoholic beverages on or about October 25, 2007; (3) he failed to notify his probation officer at least ten days prior to any change in employment; (4) he consumed alcoholic beverages on or about October 6, 2007; and (5) he committed the open container offense on or about October 6, 2007.

At Black Bear's final revocation hearing on December 19, 2007, the Government presented the testimony of Officer Becker and Probation Officer Vermeulen. Officer Becker testified that Middleton reported to him that Black Bear hit her because he believed she was seeing other men. Middleton also told Officer Becker that she and Black Bear had purchased beer from a gas station and returned to the apartment intoxicated. Officer Becker testified that Middleton's father told him that Middleton's version of these events was accurate and that Black Bear struck him with his fist when he entered the room in which his daughter and Black Bear were fighting to determine what was causing the noise. In addition to testifying about

Middleton's and her father's statements to him, Officer Becker also testified about his various observations from that night and Black Bear's admission to him that he had struck Middleton.

Vermeulen testified about her responsibility as Black Bear's probation officer for overseeing him during his term of supervised release. She testified that Black Bear's former supervisor told her that Black Bear had been fired and that Black Bear did not inform her of this change in his employment status. She then testified about the notification from her supervisor concerning Black Bear's drinking incident on October 6, 2007, and Black Bear's subsequent guilty plea related to that incident. She provided a certified state court document indicating that Harry Black Bear, with a date of birth of August 28, 1971, pled guilty to an open container charge arising from an arrest on October 6, 2007. Vermeulen also testified that Black Bear admitted to her while in the detoxification center after this offense that he had consumed alcohol. Additionally, Vermeulen testified that, as a result of supervising Black Bear, she knew that he had a girlfriend named Carey and that Carey's father's name was Ernest.

Black Bear did not testify at the revocation hearing nor did he present any witnesses. However, before he received his sentence, he stated that he "made a mistake and [was] willing to change" and that he thought that Middleton's "mother and family . . . had some kind of thing against [him]." The district court revoked Black Bear's supervised release and sentenced him to 24 months' imprisonment. Black Bear appeals.

## II. DISCUSSION

"We review the district court's decision to revoke supervised release for an abuse of discretion." *United States v. Ahlemeier*, 391 F.3d 915, 919 (8th Cir. 2004). "If the government proves by a preponderance of the evidence that the defendant violated a condition of supervised release, the district court has the discretion to

-4-

revoke supervised release." *Id.* "[T]he court's subsidiary factfinding as to whether or not a violation occurred is reviewed for clear error." *United States v. Carothers*, 337 F.3d 1017, 1019 (8th Cir. 2003) (quotation omitted). "Under clear error review, we may reverse only if we have a definite and firm conviction that the District Court was mistaken." *United States v. Willis*, 433 F.3d 634, 636 (8th Cir. 2006) (internal quotation omitted).

## A. Black Bear's Identity

Black Bear argues that the Government did not satisfy its burden of proving by a preponderance of the evidence that the person before the court was, in fact, the Black Bear who was the subject of the supervised release order or the Black Bear who committed the alleged violations of the conditions of that supervised release order. He bases his argument on the facts that neither of the two Government witnesses specifically identified Black Bear during the final supervised revocation hearing and that the Government did not present other identifying evidence.

A supervised release revocation hearing is not a trial. *United States v. Smith*, 500 F.3d 27, 31 (1st Cir. 2007). As the First Circuit stated:

> Probation revocation[3] is an entirely different stage of the criminal-correctional process. The probationer has been convicted of a crime, subjected to the sanctions prescribed by law, and has been granted conditional release in order to serve the interests of society. . . . There is no presumption of innocence in the probation revocation process, at least not in the sense in which the phrase is used with reference to the criminal process.

---

[3]Supervised release revocation and probation revocation proceedings are similar. *See United States v. Martin*, 382 F.3d 840, 844 (8th Cir. 2004); *see also United States v. Weikert*, 504 F.3d 1, 10-11 (1st Cir. 2007).

*In re Whitney*, 421 F.2d 337, 338 (1st Cir. 1970). Additionally,

> [g]iven a prior conviction and the proper imposition of conditions on the term of supervised release, when a defendant fails to abide by those conditions the government is not then put to the burden of an adversarial criminal trial. Instead, there is, as in this case, a revocation of release hearing at which, as the Supreme Court instructs, neither the right to a jury trial, nor proof beyond a reasonable doubt is required. As the Supreme Court has explained in the context of parole, such proceedings arise after the end of the criminal prosecution, including imposition of sentence. Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependant on observance of special parole restrictions.

*United States v. Carlton*, 442 F.3d 802, 809-10 (2d Cir. 2006) (internal citations and quotations omitted) (internal alterations omitted). With these principles in mind, we find no clear error in the district court's identity determinations.

At the revocation hearing, Officer Becker and Vermeulen testified about their encounters with Harry Black Bear. Officer Becker testified that Black Bear stated to him at the time of Black Bear's arrest on October 25, 2007, that he wanted to turn himself in and that he "just retaliated" against Middleton. Vermeulen, the probation officer who prepared Black Bear's presentence investigation report for the original sentencing and who supervised Black Bear for the six months of his supervised release before his arrest, testified that she knew Black Bear had a girlfriend named Carey whose father's name was Ernest. Therefore, the district court's finding that the Black Bear on supervised release was the Black Bear who admitted hitting Middleton was not clearly erroneous.

Vermeulen also testified at the revocation hearing that Black Bear did not inform her that his employment had been terminated. As his probation officer, Vermeulen had contact with Black Bear and knew whether or not he informed her of

this change. Furthermore, Vermeulen testified that Black Bear admitted to Vermeulen that he had consumed alcohol on October 6, 2007. Because Vermeulen knew Black Bear as a result of overseeing his supervised release for almost six months at that time, we do not find persuasive Black Bear's argument that Vermeulen did not know if it was Black Bear speaking to her. There is also no evidence suggesting that someone other than Black Bear was speaking to her from the detoxification center. Finally, Vermeulen presented a certified state court document indicating that Black Bear, whose birth date was August 28, 1971, pled guilty to an open container offense resulting from his October 6, 2007 arrest. This name and birth date is the same name and birth date as the Harry Black Bear who was on supervised release, and the date of the offense coincided with Black Bear's admission to Vermeulen that he had consumed alcohol.

While an in-court identification of Black Bear at the revocation hearing clearly would have been advisable, we do not have a definite and firm conviction that the district court erred in its finding that the person before the court was the Harry Black Bear who was the subject of the supervised release order and the Harry Black Bear who committed the acts at issue in this proceeding. *See United States v. Williamson*, 213 Fed. Appx. 235, 237 (4th Cir. 2007) (unpublished per curiam) (finding "sufficient evidence, including the testimony of the responding police officer and Williamson's probation officer, to support that court's conclusion that Williamson was the person who committed the . . . offense, upon which the supervised release violation was based"); *see generally United States v. Birdine*, 515 F.3d 842, 844-45 (8th Cir. 2008).

Although not necessary to our conclusion, we note that the circumstances surrounding the final revocation hearing also strongly suggest that the district court's identity determination was correct. The district court judge who conducted the revocation hearing was the same judge who sentenced Black Bear for his original crime. Therefore, we have no doubt that the judge was aware of Black Bear's identity. *See United States v. Rojo-Mendoza*, 83 F.3d 430, 1996 WL 183489, at *1 (9th Cir.

1996) (unpublished table opinion) (stating that an identity challenge at a revocation hearing with respect to a guilty plea in a previous proceeding would not have been successful because the judge and the defendant's attorney were the same judge and attorney in the guilty plea proceeding). Additionally, Officer Becker testified at Black Bear's preliminary revocation hearing the day before the final revocation hearing and identified the Black Bear in the court room as the Black Bear he arrested on October 25, 2007.

Furthermore, Black Bear did not present any evidence to show that he was not the correct Harry Black Bear. *Cf. id.* (finding that a plea agreement was sufficient to prove Rojo-Mendoza violated a condition of his supervised release because he "did not challenge the authenticity of the document[] and did not present evidence showing that the defendant who pleaded guilty was different from Rojo-Mendoza"). Instead, at his initial appearance before a magistrate judge, Black Bear stated that he was Black Bear, he was thirty-six years old, and he graduated from twelfth grade. All of these admissions are consistent with the Black Bear who is the subject of the supervised release order. Black Bear also admitted to the district court at the revocation hearing that he "made a mistake and [was] willing to change" and that he thought that Middleton's "mother and family . . . had some kind of thing against [him]."

### B.    Hearsay

Black Bear also argues that the district court improperly considered hearsay testimony from both Officer Becker and Vermeulen. We review this evidentiary claim for an abuse of discretion. *Martin*, 382 F.3d at 844. "The standard for admitting hearsay in a revocation hearing is different than at trial on the merits. The federal rules of evidence do not apply, but rules of criminal procedure afford a defendant the opportunity to question adverse witnesses at the hearing." *United States v. Reynolds*, 49 F.3d 423, 426 (8th Cir. 1995) (internal quotation omitted); *see also United States v. Ray*, 530 F.3d 666, 668 (8th Cir. 2008). In determining whether to

admit hearsay during a supervised release revocation proceeding, the district court should "balance the defendant's constitutional right to confront a witness against any governmental explanation for why confrontation is undesirable or impractical." *Id.* (internal quotation omitted). The district court "must also consider the reliability of the evidence offered in place of live testimony." *Id.* Even if the district court does not conduct this balancing test, "this court may itself perform the [] analysis on review" if "the underlying facts have been sufficiently developed." *Martin*, 382 F.3d at 845.

In this case, the district court did not conduct the balancing test to determine whether or not to admit the hearsay evidence offered by Officer Becker and Vermeulen. Furthermore, the Government did not proffer any explanation for the absence of Middleton and her father, both of whom spoke to Officer Becker, or the absence of the supervisor at Black Bear's former place of employment and Vermeulen's supervisor, both of whom spoke to Vermeulen. Therefore, we also cannot conduct the balancing test because "the underlying facts have [not] been sufficiently developed." *Id.* The Government contends that the hearsay statements by Officer Becker and Vermeulen still may be admitted if they bear sufficient indicia of reliability, "even if the Government fails to proffer a reasonable explanation for the absence of a witness." This contention, though, is contrary to our previous holdings. We have held that "[t]he district court must engage in a balancing test and weigh the defendant's right to confront adverse witnesses against the grounds asserted by the government for not producing the witness[es]." *Ahlemeier*, 391 F.3d at 922. Therefore, because the district court did not conduct the balancing test and because we have an insufficient record to do so, we will assume that the district court abused its discretion in considering the hearsay aspects of Officer Becker's and Vermeulen's testimonies.

We must now determine whether the district court's erroneous consideration of hearsay evidence in this revocation hearing was harmless. *See United States v. Fry*, 276 Fed. Appx. 547, 548 (8th Cir. 2008) (unpublished per curiam); *United States v.*

*Stanfield*, 360 F.3d 1346, 1360 (D.C. Cir. 2004).[4]  We conclude that any error in considering the hearsay evidence was harmless because the Government presented sufficient evidence, apart from the hearsay statements, to prove by a preponderance of the evidence that Black Bear violated the conditions.  Officer Becker testified that Black Bear told him after the altercation with Middleton that he wanted to turn himself in and that he "just retaliated" against Middleton because she hit him first.  This admission by Black Bear is not hearsay.  *See* Fed. R. Evid. 801(d)(2).  Officer Becker also testified that he observed that the apartment was in disarray, that Middleton had a red face and swollen lip, and that Middleton's father had a red mark on his face.  Additionally, Officer Becker observed that Black Bear smelled of alcohol and appeared intoxicated when he arrested him.  These observations did not include any out-of-court statements and are not hearsay.  *See id.* 801(c).  Vermeulen testified that Black Bear did not tell her that his employment had been terminated, and Black Bear does not dispute that his employment had been terminated.  Vermeulen also testified that Black Bear admitted to her on the telephone from the detoxification center that he consumed alcohol on or about October 6, 2007.  *See id.* 801(d)(2).  Finally, Vermeulen produced a certified state court document indicating Black Bear's open container guilty plea resulting from that drinking incident.  *See id.* 803(8), 902(4).

This nonhearsay evidence sufficiently supports the district court's finding by a preponderance of the evidence that Black Bear violated the conditions of his supervised release: (1) he committed the offense of simple assault on or about October

---

[4]We need not utilize the harmless beyond a reasonable doubt standard because Black Bear's opening brief does not present an argument concerning a Sixth Amendment right to confront witnesses.  *See United States v. Carrillo*, 380 F.3d 411, 413 n.3 (8th Cir. 2004) (stating that we do not consider an argument that is not raised in an opening brief); *see also United States v. Frenchie*, 132 Fed. Appx. 672, 674 (8th Cir. 2005) (unpublished per curiam) (utilizing the harmless beyond a reasonable doubt standard when the defendant argued that his Sixth Amendment right to confrontation was violated).

25, 2007; (2) he consumed alcoholic beverages on or about October 25, 2007; (3) he failed to notify his probation officer at least ten days prior to any change in employment; (4) he consumed alcoholic beverages on or about October 6, 2007; and (5) he committed the open container offense on or about October 6, 2007. Therefore, even though the district court considered hearsay statements by Officer Becker and Vermeulen without conducting the required balancing test, this error was harmless. The district court did not clearly err in its findings, and it did not abuse its discretion in revoking Black Bear's supervised release.

## III.    CONCLUSION

For the foregoing reasons, we affirm the revocation of Black Bear's supervised release.

_____