# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3157

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| John Anthony Smith, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  June 9, 2009
Filed:  August 5, 2009

_____

Before SMITH and SHEPHERD, Circuit Judges, and LIMBAUGH,[1] District Judge.

_____

LIMBAUGH, District Judge.

After finding that John Anthony Smith had violated one of the conditions of his supervised release, the District Court[2] revoked Smith's release and sentenced him to serve the remainder of his supervised-release term in prison.  Smith appeals, arguing that the District Court clearly erred in finding that he had violated the conditions of

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

his supervised release. Smith also contends that the court abused its discretion in revoking his supervised release. We affirm.

In 2003, Smith pleaded guilty to federal charges of sexual abuse of a minor in Indian country and was sentenced to thirty-six months of imprisonment and three years of supervised release. Smith began his term of supervised release in September 2005. In January 2007, the conditions of Smith's supervised release were modified to prohibit contact with minors under the age of eighteen without probation-officer approval and appropriate adult supervision. Smith's probation officer explained the new condition to Smith in detail, and Smith acknowledged that he understood it. Nevertheless, in August 2007, Smith violated this condition of his release, leading the District Court to revoke Smith's supervised release and impose a sentence of eleven months in prison and one year of supervised release. In July 2008, Smith was again released from prison, subject to the continuing condition regarding his association with minors. Smith's probation officer again explained the condition to Smith, and Smith stated that he understood the condition. In August 2008, Smith's probation officer filed a petition with the District Court alleging that on August 13, Smith had again violated the condition that he not associate with minors. Smith was arrested later that day and detained pending a revocation hearing.

The dispute in this case involves whether the government proved by a preponderance of the evidence that Smith violated the conditions of his release by having a minor in his residence on August 13, 2008, without permission from his probation officer and without the presence of a responsible adult. See United States v. Black Bear, 542 F.3d 249, 252 (8th Cir. 2008) (standard of review). According to the testimony presented at Smith's revocation hearing, on the morning of August 13, 2008, Senora Thompson, a child protection worker for the Red Lake Department of Children and Family Services, visited the split-entry ranch residence of Smith and his wife in search of a juvenile who had run away. Thompson testified that Smith answered her knock at the front door, identified himself, and stated that he had not

seen the missing juvenile. Thompson further testified that at her request, Smith called out to his wife, who was in the kitchen and out of sight, about the missing juvenile. While Smith and his wife were conversing, Thompson saw an eight-to-ten-year-old boy peek over the edge of a couch that was located in Smith's living area, up a short flight of stairs and visible to Thompson from her position in the entryway of the residence. Thompson described the boy as having short black hair and wearing a dark-colored T-shirt. According to Thompson, after looking directly at her for a moment, the boy laid his head back on the couch. Thompson did not speak to the boy and did not ask Smith or his wife about the boy.

Thompson further testified that after leaving Smith's residence, she telephoned a child welfare advocate to ask whether Smith was permitted to have minors in his home and to report that she had seen a child in the residence. The child welfare advocate told Thompson that Smith was generally not permitted to have contact with minors and that the advocate would notify police to investigate the matter further. Thompson testified that shortly after this telephone conversation, she saw a tan, four-door sedan leaving the vicinity of Smith's house and in the back seat of that vehicle, she saw the same boy she had earlier observed on the couch at Smith's residence. When Thompson returned to her office later that morning, she prepared a report describing what she had witnessed, and based in part on that report, Smith was arrested for violating the conditions of his release. A few days later, Smith's wife and her friend, a nineteen-year-old woman named Allison Rogers, arrived at Thompson's office insisting that it was Rogers—not an eight-to-ten-year-old boy—that Thompson had seen on Smith's couch the morning of August 13. The women demanded that Thompson revise her report. Thompson testified that she refused to revise her report because she was certain it was a young boy, not Rogers, that she had seen on the couch the morning of August 13.

Allison Rogers testified that she was staying temporarily at Smith's residence during August 2008 and while she was there, she slept on the couch in Smith's living

room. Rogers also testified that she was the individual who peeked over the couch at Thompson on the morning of August 13. According to Rogers, there were no children present in the Smith residence while she stayed there, including on the morning of August 13. Rogers acknowledged that she and Smith's wife later went to Thompson's office to demand that Thompson correct her report of the incident. Rogers also testified that on the morning of August 13, she was wearing a white shirt and gray sweat pants and that her hair was "tipped" or bleached on the ends.

Smith's probation officer testified that on the morning of August 13, she was contacted by the child welfare advocate who had earlier spoken with Thompson and was advised that a young boy was in the Smith residence that morning. The probation officer arrived at Smith's residence a short time later and found no children present at the home. Nevertheless, based on Thompson's report that a young boy had been present in the residence earlier that morning, Smith was arrested.

The District Court found the evidence sufficient to establish that an eight-to-ten-year-old boy was present in Smith's residence on the morning of August 13 without the approval of his probation officer and without a responsible adult also present. The court found credible Rogers's testimony that she was present in the Smith residence on August 13, but the court did not credit Rogers's testimony that she was the individual Thompson observed peeking over the couch in Smith's living room that morning. The court ultimately concluded that Smith had violated the conditions of his release, and the court revoked Smith's supervised release.

On appeal, Smith contends that "[b]ecause the district court explicitly found [Rogers] to be credible, . . . it was clear error to nonetheless credit contradictory and uncorroborated testimony provided by" Thompson that a minor was present in Smith's residence in violation of his conditions of release. Br. of Appellant at 11. According to Smith, the court abused its discretion by revoking his supervised release based on these inconsistent factual findings. We review a district court's decision to revoke

-4-

supervised release for an abuse of discretion, and we review the factual determinations underlying the court's decision to revoke for clear error. Black Bear, 542 F.3d at 252.

Here, the District Court found that "there was a child in [Smith's] home" and that "Allison Rogers was also present in that home." Tr. of Proceedings (Final Revocation) at 106. The court also made the following comments regarding Rogers's testimony:

> The witness is a young woman, but . . . [s]he is not eight or ten years old. Her hair is not long, but she is not a young boy. Her hair is tipped, it is colored, as is not uncommon for young women. . . . And she was asked, "what were you wearing?": I was wearing a white T-shirt with gray sweats." That's what she was wearing. I have no doubt that she was telling the truth. She would have no reason to fudge or shape her testimony in any fashion. But the testimony of the witness who saw the child is [that] the child was wearing a dark shirt. That does not match up with the information I had before me.

Id. at 106–07. The District Court went on to declare, "I find very clear evidence that there was a child wearing a dark shirt and a woman wearing light clothing." Id. at 108.

Contrary to Smith's suggestions, the District Court's factual findings do not leave us with a "definite and firm conviction that the District Court was mistaken." Black Bear, 542 F.3d at 252. Viewing the District Court's comments regarding Rogers's credibility in context, it is apparent that the court found her testimony to be credible only insofar as it related to her presence in the Smith residence on August 13, 2008, and her attire on that morning. The court rejected Rogers's testimony that she was the individual Thompson saw peeking over the couch and credited instead Thompson's testimony that she saw a young boy peeking over the couch. As we have long acknowledged, assessing a witness's credibility is a duty for the district court, and its assessment is "virtually unreviewable on appeal." United States v. Ralph, 480 F.3d

888, 890 (8th Cir. 2007) (quoting <u>United States v. Carothers</u>, 337 F.3d 1017, 1019 (8th Cir. 2003)). We decline to disturb the court's credibility assessments and related factual findings in this case.

In sum, we are satisfied that the government proved by a preponderance of the evidence that Smith violated the terms of his supervised release. The District Court's factual findings based on that evidence were not clearly erroneous, and the court did not abuse its discretion in revoking Smith's supervised release. Accordingly, we reject Smith's arguments on appeal and affirm the judgment of the District Court.

_____