# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3315

_____

United States of America,

        Plaintiff - Appellee,

v.

David Lynch,

        Defendant - Appellant.

*
*
*
*
*  Appeal from the United States
*  District Court for the Northern
*  District of Iowa.
*
*
*

_____

Submitted: April 16, 2010
Filed: July 26, 2010

_____

Before BYE, GIBSON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

David Lynch was found to have violated the terms of his supervised release and was sentenced to 24 months' imprisonment with two additional years of supervised release. In revoking his supervised release, the district court[1] determined Lynch committed first-degree harassment under Iowa law, which constituted a Grade A violation of supervised release. On appeal, Lynch contends he did not possess the requisite intent to commit first-degree harassment. We affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

## I

On February 22, 2001, David Lynch was indicted on four drug and gun charges. He pleaded guilty to one count of conspiracy to manufacture and distribute 50 grams or more of pure methamphetamine and a mixture or substance containing marijuana, and one count of possession of a firearm by a prohibited person. He was sentenced to 120 months' imprisonment on each count, to be served concurrently. He was also ordered to serve concurrent terms of supervised release of five years on Count I and three years on Count II.

Lynch began serving his supervised release on June 12, 2009. On September 3, 2009, the supervising probation officer filed a petition for a warrant alleging Lynch violated the following conditions of his supervised release: 1) associating with felons; 2) lying to his probation officer and failing to follow the officer's instructions; 3) failing to notify his probation officer of any change in residence; 4) committing another federal, state, or local crime; and 5) possessing a dangerous weapon, a baseball bat.

The alleged violations stemmed from Lynch's relationship with Kelli Key, another felon he was romantically involved with during his term of supervised release. While he was warned by his probation officer not to have contact with Key, he continued seeing her and wanted to know who was "snitching" him out to the probation office. Lynch suspected Key's ex-husband, David Boll, had been the source of the information. On August 25, 2009, Lynch received permission from the probation office to pick up some of his belongings at Key's residence. The district court found, however, that he timed his visit so he could be present when Boll arrived for a bi-weekly child custody exchange with Key.

As a result of his ongoing custody dispute with Key, Boll had an audio recording device that captured the incident with Lynch when he arrived at the

property. The recording was entered into evidence and captured the essence of the encounter. At the outset of the incident, Lynch was waiting outside leaning on a station wagon parked in the driveway. After Boll exchanged custody of his son with Key, Lynch began making threats to Boll in "an aggressive manner." Lynch told Boll several times if he called the police again, Boll would "see what happens." Boll repeatedly asked, "[i]s that a threat?" and Lynch continued to tell Boll to "see what happens."

Boll testified that Lynch then grabbed a baseball bat lying on the hood of the station wagon and "raise[d] the baseball bat above his shoulder and [made] a motion that he's going to hit me." Other witnesses, including Key, Key's daughter Leann Walztoni, and Walztoni's boyfriend Cody Cramer denied seeing Lynch with a baseball bat, although it seemed clear there was a bat within reach as it became the focus of the conversation on the recording. Boll asked Lynch if he was going to hit him with the bat, and Lynch responded, "[y]ou want me to?" Boll then repeatedly dared Lynch to hit him with the bat, and Lynch responded, "I'll fucking smash you." Boll told Lynch to go ahead and "bust my head open." Despite his suggestions, Boll testified he was hesitant to turn around and walk away because he thought Lynch might strike him from behind. The argument concluded as Boll left the property.

At the revocation hearing, Lynch admitted violating his supervised release, including threatening Boll by stating "I'll fucking smash you" and "[c]all the cops again and see what happens." However, he denied having a baseball bat, and he argued his actions did not qualify as harassment in the first-degree.

The district court concluded Lynch committed Grade C violations for associating with felons, lying to his probation officer, and failing to follow the officer's instructions. The court further declined to find that Lynch changed his residence without permission, and therefore did not find that condition violated. Finally, the court found Lynch committed a new offense of harassment in the first-

degree by communicating a threat to commit the crime of assault with the specific intent to cause a serious injury in violation of Iowa law. The court also found Lynch threatened Boll with a baseball bat. Boll's account was most credible, according to the court, largely because of the recording and the circumstantial evidence. It noted, if there was not a bat present, "someone would have protested and we would hear that on the recording." The court further found it was no coincidence that Lynch was present at the time, and rather he had specifically timed the events so he could confront Boll.

The court determined the new state law violation was a Grade A violation under section 7B1.1(a) of the United States Sentencing Guidelines (U.S.S.G.). As a result, it calculated a Guidelines range of 24 to 30 months' imprisonment, and it ultimately sentenced Lynch to 24 months' imprisonment. On appeal, Lynch only challenges the Grade A violation based on the new state law violation.

II

"We review a district court's decision to revoke supervised release for an abuse of discretion, and we review the factual determinations underlying the court's decision to revoke for clear error." United States v. Smith, 576 F.3d 513, 515 (8th Cir. 2009). A violation of supervised release need only be established by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3).

Under U.S.S.G. § 7B1.1(a)(1), a Grade A violation of supervised release is established by the commission of a "crime of violence" offense that is punishable by more than one year of imprisonment. A "crime of violence" includes an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another," as well as "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 7B1.1, cmt. n.2; U.S.S.G. § 4B1.2(a).

Harassment under Iowa law is committed "when the person, purposefully and without legitimate purpose, has personal contact with another person, with the intent to threaten, intimidate, or alarm that other person." Iowa Code § 708.7(1)(b). Personal contact "means an encounter in which two or more people are in visual or physical proximity to each other," and it "does not require a physical touching or oral communication, although it may include these types of contacts." Id. First-degree harassment under Iowa law is committed when "the person commits harassment involving a threat to commit a forcible felony." Iowa Code § 708.7(2). The definition of "forcible felony" includes the felony offense of assault causing serious injury. Iowa Code §§ 702.11(1); 708.2(4). First-degree harassment under Iowa law is classified as an aggravated misdemeanor, which is punishable by not more than two years imprisonment.[2] Iowa Code §§ 708.7(2)(b); 903.1(2).

Lynch contends the court's finding focused solely on the threatening words and not the context in which those words were uttered. He argues his threat to "smash" Boll was responsive, heat-of-the-moment bluster that is not the sort of premeditated or purposeful intimidation the statute is intended to address. Lynch also asserts the court failed to find the intent element required for a first-degree harassment offense, and because the record shows only responsive bluster and not the necessary purpose or intent, it was error for the court to find first-degree harassment.

The Iowa Supreme Court has recognized "[i]ntent is a state of mind difficult of proof by direct evidence. It may, however, be established by circumstantial evidence and by inferences reasonably to be drawn from the conduct of the defendant and from all the attendant circumstances in the light of human behavior and experience." State v. Casady, 491 N.W.2d 782, 787 (Iowa 1992) (citation omitted); see also State v.

---

[2]There is no dispute first-degree harassment is punishable by more than one year of imprisonment and has as an element the threatened use of physical force against another person, as required under the Guidelines. U.S.S.G. § 7B1.1. Lynch only challenges the intent aspect in this case.

Acevedo, 705 N.W.2d 1, 5 (Iowa 2005). "Threats of physical harm need not be directly expressed, but may be contained in 'veiled statements' nonetheless implying injury to the recipient when viewed in all the surrounding circumstances." State v. McGinnis, 243 N.W.2d 583, 589 (Iowa 1976) (citation omitted).

In State v. Button, 622 N.W.2d 480, 483-84 (Iowa 2001), the Iowa Supreme Court upheld a defendant's conviction for harassment in the second degree. The defendant in Button made threatening statements to a police officer after he was arrested. 622 N.W.2d at 482. First, the defendant told the officer he would have "blown [his] brains out" if they were pheasant hunting. Id. The officer responded, "You're threatening me, huh?" Id. at 483. The defendant answered, "Yeah, I would've tried to." Id. He later told the officer, "I'm gonna remember you," which was followed by another shooting reference. Id.

On appeal, the defendant in Button argued he lacked the requisite intent for the crime. Id. The court disagreed, noting the context of the events provided reason for the jury to conclude the statements "evidenced an attempt to intimidate" the officer. Id. at 484. Indeed, the officer testified he feared for his safety. Id. The court further found the defendant's asserted inability to carry out the threats was inapposite because it was not required under the statute. Id. Moreover, the court found his statement "I'm gonna remember you" suggested a plausible future action against the officer. Id.

In this case, the court did not abuse its discretion by revoking Lynch's supervised release. The court discussed the circumstances leading up to the altercation, which provided support for its findings. Specifically, the court found Lynch timed his arrival at Key's residence to coincide with Boll's arrival. Moreover, the court concluded Lynch possessed a baseball bat, which was evident from the recording where Boll references the bat and asks whether Lynch would strike him with it. Lynch proceeded to make several aggressive statements as "see what happens" and "I'll fucking smash you."

Taken in the context and manner in which Lynch made his statements to Boll, a reasonable person of ordinary intelligence could construe these statements as a serious expression of intent to cause serious harm to Boll.  McGinnis, 243 N.W.2d at 589 ("All that is necessary [for a threat] is that it be definite and understandable to a mind of ordinary intelligence.").  Similar to Button, the context of the events provided evidence of Lynch's intent.

Moreover, the court did not clearly err in finding the intent element, contrary to Lynch's suggestion.  The court specifically found Lynch communicated  "a threat to commit the crime of assault *with the specific intent to cause a serious injury*."  The effect of Lynch's intent was evident from the reaction it provoked from Boll, who testified he was afraid to turn around and walk away because he thought Lynch might strike him in the back of the head.  The district court was entitled to credit Boll's account of the incident, including his description of Lynch's actions with the baseball bat.  See United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003) (affirming the district court's revocation of supervised release when the court found the victim's testimony was credible, which is "virtually unreviewable on appeal").  At most, Lynch's view of the evidence is one of two permissible views, and the district court's choice of the other view of the evidence cannot be clear error.  United States v. Rice, 49 F.3d 378, 385 (8th Cir. 1995) ("Where there are two permissible views of the evidence, the district court's choice between them cannot be clearly erroneous.") (citing Anderson v. Bessemer City, 470 U.S. 564, 574 (1985)).

III

For the foregoing reasons, we conclude the district court did not abuse its discretion in revoking Lynch's supervised release, nor did it clearly err in its factual determinations.  We affirm the judgment of the district court.

_____