# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 10-1718

————————

United States of America,      *
     *
     Plaintiff - Appellee,      *    Appeal from the United States
     *    District Court for the Southern
     v.      *    District of Iowa.
     *
Rickey Orville Benton, Jr.,      *
     *
     Defendant - Appellant.      *

————————

Submitted: November 19, 2010
Filed:  December 13, 2010

————————

Before MURPHY, SMITH, and BENTON, Circuit Judges.

————————

MURPHY, Circuit Judge.

Rickey Benton's supervised release was revoked by the district court[1] which sentenced him to 27 months imprisonment for violating Iowa's concealed weapon law and 9 months consecutive for several other offenses, to be followed by 12 months of supervised release.  Benton appeals, arguing that the evidence was insufficient to find that he had violated the concealed weapon law and that the district court imposed an unreasonable sentence.  We affirm.

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

Benton had pled guilty in 1996 to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and  was sentenced to 180 months and 36 months of supervised release.  After serving his sentence, he began his term of supervised release on February 19, 2010.  Within days the probation office became aware that Benton appeared to be violating the terms of his supervised release and it moved to revoke his release on March 8 on the grounds that he had: 1) failed to comply with required drug testing, 2) associated with known felons, 3) associated with drug users and persons engaged in criminal activity, 4) committed theft, burglary, and driving without a license, and 5) carried a concealed weapon.

The district court conducted a revocation hearing, after which it found that Benton had violated his supervised release by associating with felons and drug users, driving without a license, failing to comply with drug testing, and carrying a concealed weapon.  The court concluded that the government had failed to prove that Benton had committed theft or burglary.

Altoona, Iowa police officers had responded on March 6, 2010 to a call that someone was burglarizing a house in which they knew Benton was staying.  Officer Alyssa Wilson Green was the first to arrive.  She saw a woman later identified as Abigail Hill loading a car parked in front of the residence.  Officer Wilson Green testified at the revocation hearing that Hill told her she was helping Benton move and that he was inside the house.  Wilson Green said she wanted to speak with him, and Hill took her into the house to Benton's bedroom.  The bedroom door was jammed, and Hill had to push it open.  When officer Wilson Green entered the room, a woman inside told her that Benton had jumped out the window.

When two other officers arrived at the house, Wilson Green advised them that Benton had jumped out a window.  Officer Josh Clark then searched the back of the house and found tracks in the snow leading to a fence and then over into another yard.  A neighbor told him that he had seen a man wearing jeans and a dark sweatshirt walk

from the house toward a nearby park. A few hours later Benton returned to the residence. Officer Clark testified that he saw him approach the house from the garage wearing jeans and a dark sweatshirt. When Clark asked Benton where he had been, he replied that he had been across the street at a neighbor's house. Clark and another officer patted Benton down and found two throwing stars in his pocket. Officer Clark later testified that the throwing stars had very sharp edges capable of inflicting serious injury. The district court found the testimony of officers Clark and Wilson Green credible and sufficient to establish a violation of Iowa's concealed weapon law.

The district court determined that Benton's most serious violation was for carrying a concealed weapon, Grade B under the sentencing guidelines, while the remaining violations were Grade C. Based on a criminal history category VI, the court calculated an advisory guideline range for the concealed weapon violation to be 21 to 27 months and 8 to 14 months for the remaining violations. The court sentenced Benton to 27 months for the concealed weapon violation and 9 months consecutive for the remaining violations, to be followed by one year of supervised release. Benton appeals, arguing that the evidence was insufficient to support a finding that he had violated Iowa's concealed weapon law and that the court imposed an unreasonable sentence.

We review a district court's "decision to revoke supervised release for an abuse of discretion, and we review the factual determinations underlying the court's decision to revoke for clear error." United States v. Smith, 576 F.3d 513, 515 (8th Cir. 2009). "A violation of supervised release need only be established by a preponderance of the evidence." United States v. Lynch, 611 F.3d 932, 934 (8th Cir. 2010) (citing 18 U.S.C. § 3583(e)(3)).

Under U.S.S.G. § 7B1.1(a)(1), a Grade B violation of supervised release includes any federal, state, or local offense that is punishable by a prison term exceeding one year. Iowa Code § 724.4(1) makes it a crime to be "armed with a

-3-

dangerous weapon concealed on or about the person."  An exception applies if the person remains in his own dwelling with the weapon.  Iowa Code § 724.4(4)(a).  Benton concedes that a violation of § 724.4(1) is a Grade B violation, but argues that the government failed to present sufficient evidence to show that the throwing stars are a dangerous weapon or that he left his own property with them.

A dangerous weapon is defined under Iowa Code  as "any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed."  Iowa Code § 702.7.  Whether a device qualifies as a dangerous weapon under this definition is a question of fact.  See State v. Dallen, 452 N.W.2d 398, 398–99 (Iowa 1990).

At the revocation hearing the government introduced into evidence the throwing stars found on Benton, as well as testimony by officers Wilson Green and Clark.  Both officers testified that the throwing stars were capable of causing serious injury or death when used as intended.  Officer Clark added that the stars were very sharp and could cause serious injury if used as a knife.  The district court found the officers' testimony credible and sufficient to show that the throwing stars were a dangerous weapon.  After examining the record, we agree and conclude that the court did not clearly err in finding that the throwing stars were dangerous weapons as defined under § 702.7.

Benton also argues that the district court's finding that he took the throwing stars onto public property is unsupported because neither Wilson Green nor Clark testified that they had seen Benton off the property of his residence.  Officer Wilson Green testified that when she entered Benton's room, a woman inside told her he had jumped from the window.  Officer Clark testified that he found tracks in the snow leading away from the house and through another yard.  He encountered a neighbor who saw a man in a dark sweatshirt and jeans going away from the house toward a

nearby park. A few hours later Benton returned to the house wearing a dark sweatshirt and jeans and told officer Clark that he had been across the street. Benton offered no evidence to contradict the officers' testimony. Having reviewed the record, we conclude that the district court did not clearly err in finding that Benton had taken the throwing stars from his dwelling onto public property.

The government thus proved by a preponderance of the evidence that Benton violated the terms of his supervised release by carrying a concealed weapon in violation of Iowa Code § 724.4(1). The district court's factual findings were not clearly erroneous, and the court did not abuse its discretion in revoking Benton's supervised release.

Benton also appeals his sentence. He argues that the district court failed to consider sufficiently the 18 U.S.C. § 3553(a) factors, failed to explain adequately its reasoning for the sentence imposed, and imposed an unreasonable sentence. We review a district court's sentence on revocation of supervised release for procedural soundness and we review its substantive reasonableness under "the same reasonableness standard that applies to initial sentencing proceedings." United States v. Merrival, 521 F.3d 889, 890 (8th Cir. 2008).

Because Benton raised no objection to the adequacy of the district court's explanation or its consideration of the § 3553(a) factors at his revocation hearing, our review is for plain error. United States v. Gray, 533 F.3d 942, 945 (8th Cir. 2008). The court listened to the arguments presented by Benton and his counsel and explained that it was especially influenced by how soon after his release from prison he had violated his supervised release and by the number of violations he had committed. Although the court could have made specific reference to other factors relevant under § 3553(a), we are satisfied that the court was aware of the statute and adequately considered it in determining the appropriate sentence. See United States v. Perkins, 526 F.3d 1107, 1111 (8th Cir. 2008) (citing Rita v. United States, 551 U.S.

338 (2007)). We conclude that the district court committed no plain procedural error in sentencing Benton.

Finally Benton contends that the district court imposed a substantively unreasonable sentence. We review the substantive reasonableness of a sentence under a deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41 (2007). A district court's decision to impose a consecutive or concurrent sentence is also reviewed for reasonableness, United States v. McDonald, 521 F.3d 975, 980 (8th Cir. 2008), similar to an abuse of discretion standard. United States v. Mathis, 451 F.3d 939, 941 (8th Cir. 2006).

Benton asserts that the district court should have sentenced him based solely on his most serious violation, the Grade B violation which had an advisory guideline range of 21 to 27 months under U.S.S.G. 7B1.4. He argues that the court's addition of 9 months for the Grade C violations amounts to an unwarranted upward departure. We have previously rejected such an argument, concluding that "a district court's decision to exceed 'the suggested range in the policy statements of Chapter 7 [is not] considered to be an upward departure from the guidelines.'" United States v. Baker, 491 F.3d 421, 423 (8th Cir. 2007) (quoting United States v. Cotton, 399 F.3d 913, 916 (8th Cir. 2005)).

Prior to sentencing him, the court explained that it was very discouraged that Benton had committed so many violations of his supervised release within less than three weeks after his release and that it was greatly disturbed by his possession of a dangerous weapon. The court also reviewed Benton's presentence investigation report from his 1996 conviction before determining that he should be sentenced to 27 months for his Grade B violation and 9 months consecutive for his Grade C violations. After review of the revocation hearing transcript, we conclude that the district court did not abuse its discretion by the consecutive sentences. The sentences were within statutory limits, see 18 U.S.C. § 3583(e)(3), and the district court gave consideration to the

appropriate factors, sufficiently explained its reasoning, and acted well within its broad discretion in formulating Benton's sentence.

Accordingly, we affirm the judgment of the district court.

_____