# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3294/3564

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Randy Lee Vanhorn, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: April 12, 2011
Filed: June 9, 2011

———————

Before LOKEN, BALDOCK,[1] and MURPHY, Circuit Judges.

———————

BALDOCK, Circuit Judge.

Defendant Randy Lee Vanhorn appeals the district court's[2] revocation of his supervised release. Through counsel, he argues he did not violate the condition of supervised release requiring him to stay at a halfway house for six months because his refusals to go to a halfway house were mere talk and he was never told when to arrive

———————————

[1]The Honorable Bobby R. Baldock, United States Court of Appeals for the Tenth Circuit, sitting by designation.

[2] The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

at any particular halfway house. Pro se, he argues the condition itself was invalid. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.

Over a decade ago, a jury convicted Defendant of eleven counts of mail fraud in violation of 18 U.S.C. § 1341 and three counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (c)(4)(B). The district court sentenced Defendant to seventy-one months of imprisonment and three years of supervised release. After his release from prison, Defendant violated the terms of his supervised release by committing a state crime. Thus, the Government moved to revoke his supervised release.

Pursuant to the Government's motion, the district court held a revocation hearing in January 2009. The court concluded Defendant had violated his supervised release by committing another crime. Both defense counsel and Defendant's probation officer recommended placement in a halfway house upon Defendant's release from prison. The district court sentenced him to eighteen months of imprisonment, to be followed by one year of supervised release, with the first six months of supervised release to be served in an unspecified halfway house.[3]

Defendant timely appealed the sentence imposed at the revocation hearing. He was represented by counsel, who filed an Anders brief, and he filed two supplemental briefs pro se. Nowhere in those briefs did Defendant challenge the imposition of the halfway house condition of supervised release. We affirmed the district court's

---

[3] The text of the judgment states: "Defendant shall serve a period of SIX (6) months of supervised release in a residential reentry center under the guidance and direction of the U.S. Probation Office." United States v. Vanhorn, 4:00-cr-00096 (E.D. Ark., filed May 10, 2000), Dkt. No. 190 at 1.

imposition of eighteen months of imprisonment and one year of supervised release. United States v. Vanhorn, 326 F. App'x. 984 (8th Cir. 2009) (unpublished).

While in prison, Defendant filed a pro se motion with the district court to remove the condition of supervised release that he be placed in a halfway house. The district court denied this motion. Just before he was released, Defendant filed an appeal with this Court, challenging the district court's denial of his motion to remove that condition of supervised release. We summarily affirmed the district court's order.

In June 2010, Defendant was released from prison but was not placed in a halfway house. When his probation officer discussed possible placement at the City of Faith, a halfway house in Little Rock, Arkansas, Defendant said he would not go if he were told to report to the City of Faith. According to his probation officer, he continued to maintain he would not go to any halfway house because he did not need to. Additionally, in August 2010, Defendant wrote an email to the City of Faith threatening in no uncertain terms to sue the City of Faith if it accepted him. The City of Faith never accepted Defendant.[4]

Because the City of Faith did not accept Defendant, his probation officer discussed possible placement in a Louisiana halfway house. Defendant continued to refuse to go. Based on Defendant's continued refusal to go to any halfway house and his email to the City of Faith threatening legal action, the Government once again

---

[4] Two explanations for this appear in the record. First, Defendant's probation officer explained he was ineligible for placement there because of a prior conviction. Second, an investigator who spoke with the City of Faith facility director, Daryl Bailey, said Bailey never processed a placement for Defendant because no request for his placement had ever been made. At oral argument on appeal, the Government suggested the City of Faith denied Defendant placement because of his email. We found no evidence in the record indicating that Defendant's email caused any action or inaction on the part of the City of Faith.

began revocation proceedings. At that point, no further effort was made to find a placement for Defendant in the Louisiana halfway house.

At Defendant's second revocation hearing, the district court heard testimony about all these events. An investigator employed by defense counsel also testified about conversations he had with the City of Faith facility director as well as the director of the Louisiana halfway house. He explained that while the City of Faith never received a request to place Defendant, the Louisiana facility had discussed the possibility of a placement with Defendant himself. Defendant, who is HIV positive, sought information about receiving healthcare for his condition if he were required to move to Louisiana. The district court also heard testimony from people involved in providing Defendant with healthcare in Arkansas. These people indicated they could no longer provide Defendant the care he needed if he moved to Louisiana and that the waiting list for such care in Louisiana was lengthy.

After hearing all this evidence, the district court concluded Defendant violated the condition of supervised release requiring him to go to a halfway house because he refused to go to the City of Faith, wrote an email threatening legal action, and refused to go to a Louisiana residential reentry center as well. The court further reasoned: "I'm not going to credit inferences on behalf of Mr. Vanhorn that he was really not refusing to go, that he really just wanted to clarify things for his health. No one writes an e-mail like that unless they are refusing to go." Tr. of Revocation Hrg. at 49. The court concluded: "[Defendant] is trying to manipulate the evidence to make it look as if he did not refuse. We've heard that e-mail. He was not going to go to City of Faith. That is, in essence, what he was doing. And the Court finds that the evidence overwhelmingly supports that." Id. at 59. The district court revoked Defendant's supervised release and sentenced him to six months of imprisonment. Defendant appealed.

-4-

"We review a district court's 'decision to revoke supervised release for an abuse of discretion, and we review the factual determinations underlying the court's decision to revoke for clear error.'" United States v. Benton, 627 F.3d 1051, 1054 (8th Cir. 2010) (quoting United States v. Smith, 576 F.3d 513, 515 (8th Cir. 2009)). The Government must prove a violation of supervised release by a preponderance of the evidence. Id. The district court's determination that Defendant violated a condition of his supervised release is a factual one. See United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003) (quoting United States v. Whalen, 82 F.3d 528, 532 (1st Cir. 1996) ("[T]he court's subsidiary factfinding as to whether or not a violation [of supervised release] occurred is reviewed for clear error.").

Defendant argues on appeal, as he did below, that his refusals to go to a halfway house were merely talk. He says his comments do not rise to the level of conduct, and without any conduct, there could be no violation of a condition of supervised release. The district court, however, had before it evidence that Defendant vocally and continually refused to go to any halfway house, be it the City of Faith or a Louisiana halfway house. In addition, Defendant wrote an email threatening legal action against the City of Faith if it accepted him for placement. We acknowledge that many of the cases involving a defendant's violation of a condition of supervised release requiring a defendant to spend time at a halfway house involve a defendant absconding from the halfway house or violating the rules of the halfway house. See, e.g., United States v. Paul, 409 F. App'x. 48 (8th Cir. 2011) (unpublished) (defendant was placed at halfway house but after arrival refused to reside there, demanded to be placed in jail, and threatened to abscond); United States v. White, 2011 WL 679346 (8th Cir. 2011) (unpublished) (defendant left halfway house without permission); United States v. Voice, 622 F.3d 870 (8th Cir. 2010) (defendant absconded from halfway house); United States v. Lewis, 504 F. Supp. 2d 708 (W.D. Mo. 2007) (defendant violated halfway house rules and was discharged because of his noncompliant behavior).

Nevertheless, based on Defendant's adamant refusals to go to any halfway house and his email threatening to take legal action against the City of Faith, the district court did not clearly err in finding Defendant's words and actions revealed that he had no intention of going to a halfway house. Defendant was not merely complaining about an inconvenient condition of supervised release; he made it very clear that he would not comply with that condition.[5]

Defendant also points to the fact that neither the City of Faith nor the Louisiana residential reentry facility actually offered him a placement. It remains unclear whether either facility ever received a request for Defendant's placement. Regardless, the district court's findings were based on Defendant's absolute refusal to go to any halfway house. Even if the Government had not yet found a placement for Defendant, his continued refusal and his email threatening legal action indicated nothing could induce him to go to a halfway house once a placement was found for him. In the face of such clear and repeated refusals, Defendant's probation officer rationally stopped searching for a suitable placement. The district court did not clearly err in finding Defendant refused to go to a halfway house even though he never received a placement or report date.

Defendant raises several issues pro se. We have carefully reviewed the record and discern no nonfrivolous issues. See United States v. Johnson, 418 F.3d 879, 881 (8th Cir. 2005) (citing Penson v. Ohio, 488 U.S. 75, 80 (1988) ("Once the appellate court receives this [Anders] brief, it must then itself conduct 'a full examination of all the proceeding[s] to decide whether the case is wholly frivolous. Only after this separate inquiry, and only after the appellate court finds no nonfrivolous issue for appeal, may the court proceed to consider the appeal on the merits without the

---

[5] Defendant also argues he was merely attempting to secure medical treatment before going to a halfway house. The district court did not clearly err in concluding Defendant's argument on this point was implausible; Defendant's refusals to go to any halfway house support the district court's conclusion.

assistance of counsel.")). Thus, we relieve defense counsel of his obligation to address Defendant's contention that the district court illegally imposed the condition of supervised release requiring that he spend six months in a halfway house.

Accordingly, the judgment of the district court is AFFIRMED.

_____