# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-2678

———————————————

United States of America

*Plaintiff - Appellee*

v.

Jasmine Mary Lynn Sheley

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Southern District of Iowa - Eastern

——————————

Submitted: March 19, 2021
Filed: May 21, 2021

——————————

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.

——————————

ERICKSON, Circuit Judge.

Jasmine Mary Lynn Sheley was indicted on one count of conspiracy to distribute at least 50 grams of actual methamphetamine and at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and six counts of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and

841(b)(1)(A), (B), or (C). Pursuant to 21 U.S.C. § 853, the indictment also sought forfeiture of $13,400 in United States currency, which was seized from a residence in Davenport, Iowa. Sheley pled guilty to all counts and was sentenced on each count to a term of imprisonment of 144 months, to run concurrently. Sheley, however, denied the money was subject to forfeiture. At the conclusion of an evidentiary hearing, the district court[1] determined the money was subject to forfeiture because it was used to commit or facilitate illegal drug activities. See 21 U.S.C. § 853(a)(2). Because the district court's factual findings are supported by the record and it did not err in concluding the money was subject to forfeiture under 21 U.S.C. § 853(a)(2), we affirm.

## I.    BACKGROUND

Sheley came to the attention of law enforcement when she was present during a drug transaction between an undercover officer and a person under investigation. The person under investigation then introduced Sheley to the undercover officer, allowing the undercover officer to buy "ice" methamphetamine (methamphetamine with a purity of 80% or more) directly from Sheley. The undercover officer, using pre-recorded buy funds, purchased methamphetamine from Sheley six times during the period from August 20, 2019, to September 5, 2019. In total, the undercover officer gave $6,575 to Sheley in exchange for approximately 336 grams of "ice" methamphetamine.

On the last controlled buy, Sheley sold approximately 112 grams of "ice" methamphetamine to the officer, a portion of which was "fronted" resulting in the undercover officer owing Sheley $525. A few days later, on September 10, 2019, the undercover officer met Sheley at a prearranged location to pay off the debt. The

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

undercover officer provided Sheley with $525 in pre-recorded buy funds. Surveilling law enforcement agents then followed Shelley to a residence in Davenport, Iowa. The next day, agents executed a search warrant at the residence where they seized a total of approximately 16 grams of "ice" methamphetamine. Approximately 14.4 grams of "ice" methamphetamine was found in an upstairs bedroom and in that same bedroom was a small "lockbox." The lockbox was described as thin silver metal with dimensions of approximately 10 x 8 or 9 inches with a latch that had a numbered code for a lock. Inside the box officer found THC gummies; a multi-colored purse with $8,620 in folded currency (including $500 in pre-recorded buy funds given to Sheley during the September 10, 2019, meeting); and an additional $5,280 in "loose" currency. The total amount of cash inside the box was $13,900.

Special Agent Matthew Allers, with the Iowa Department of Public Safety Division of Narcotics Enforcement, testified at the hearing that the typical price for methamphetamine in the area was around $3,500 to $5,000 per pound, depending on the source of supply. He further testified that based on Sheley's drug trafficking activities, at the time of the search, Sheley appeared to be near the end of selling her methamphetamine supply and preparing to "re-up or go get resupplied" with more "ice" methamphetamine. Special Agent Allers also testified that the amount of cash found inside the lockbox in Sheley's residence was consistent with the methamphetamine quantities Sheley was obtaining and redistributing.

As to the $13,900 seized by law enforcement from Sheley's residence, the district court found that the undisputed facts established by a preponderance of the evidence that the money was acquired either during the drug trafficking offenses or within a reasonable time thereafter. See 21 U.S.C. § 853(d) (setting forth the government's burden and noting the presumption is rebuttable). The parties stipulated that in May and June 2019 Sheley received checks totaling $31,752.63 from a settlement reached for injuries Sheley sustained in a car accident. The parties

also stipulated that as of August 7, 2019, there was less than $10 left in Sheley's checking account.

After hearing all of the evidence and the parties' arguments, the court credited Special Agent Allers' testimony and found that the cash was subject to forfeiture because the government had established by a preponderance of the evidence that the money inside the lockbox was used or intended to be used to commit or facilitate illegal drug activities.[2] The court specifically relied on Special Agent Allers' testimony, which established the large number of sales of "ice" methamphetamine by Sheley during the relevant time, and the lack of any credible explanation as to why Sheley had placed this quantity of cash all together inside the lockbox at her residence.

Sheley appeals, asserting she proved by a preponderance of the evidence that the cash, with the exception of the $500 in pre-recorded buy funds, was not connected to drug trafficking.

## II. DISCUSSION

We review the legal conclusion of whether property is subject to forfeiture *de novo*, and review the district court's factual findings for clear error. United States v. Beltramea, 785 F.3d 287, 290 (8th Cir. 2015). For the property to be subject to forfeiture, the government was required to establish by a preponderance of the evidence that the cash (1) constituted or derived from proceeds Sheley obtained, directly or indirectly, as a result of her drug-related offenses, or (2) was used or

---

[2]The district court also announced that under no scenario would Sheley be allowed to keep any portion of the cash because if it was not subject to criminal forfeiture, it would be put toward payment of a fine or it would be used to repay the Criminal Justice Act ("CJA") fund, as the court had appointed counsel to represent Sheley under the CJA.

intended to be used in any manner to commit or to facilitate drug-related offenses. 21 U.S.C. § 853(a)(1) and (a)(2). The court determined the money was subject to forfeiture under the second provision.

On appeal, Sheley contends that it was "more probable" or "at least equally likely" that the cash in the lockbox was from her personal injury settlement and the only amount proven to come from drug trafficking was the $500 in pre-recorded buy funds. She acknowledged at argument that none of the money was accidentally placed inside the box nor was it put there by someone else. Rather than advance a legal argument, Sheley is essentially asking us to re-weigh the evidence. Upon our careful review of the record, we conclude that the district court's factual findings are supported by the evidence in the record. Not only do we find no clear error in the district court's findings, but weighing the credibility of witnesses "is a duty for the district court, and its assessment is virtually unreviewable on appeal." United States v. Smith, 576 F.3d 513, 516 (8th Cir. 2009) (cleaned up). The district court did not err in determining the cash found inside the lockbox was subject to forfeiture under 21 U.S.C. § 853(a)(2).

III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____

-5-