STATE of Iowa, Appellee,

v.

Dennis E. BUTTON, Appellant.

No. 99–1200.

Supreme Court of Iowa.

Feb. 14, 2001.

Linda Del Gallo, State Appellate Defender, and Nan Jennisch, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Denise A. Timmins, Assistant Attorney General, John P. Sarcone, County Attorney, and Susan Cox, Assistant County Attorney, for appellee.

SNELL, Justice.

Defendant appeals his conviction for two counts of harassment in the second degree. He claims there was insufficient evidence to prove intent. He also claims his attorney was ineffective for failing to assert certain arguments. We find no error in the trial court proceedings and affirm the conviction.

### I. Factual Background and Proceedings

This case directly questions the scope of the harassment statute. Iowa Code § 708.7(1)(b) (1997). The challenged portions are emphasized below:

> b. A person commits harassment when the person, *purposefully* and without *legitimate purpose, has personal contact* with another person, *with the intent to threaten, intimidate, or alarm* that other person. As used in this section, unless the context otherwise requires, "personal contact" means an encounter in which two or more people are in visual or physical proximity to each other. "Personal contact" does not require a physical touching or oral communication, although it may include these types of contacts.

*Id.* (emphasis added).

Dennis E. Button arrived at Prairie Meadows Casino one night in a drunken state. This prompted a security guard to detain him and eventually summon the police. Initially, police sought to secure Button a ride home. However, he was uncooperative to such an extent that he was placed under arrest. Following his arrest, Button made two threatening statements to the arresting officer. Specifically, he told Sergeant Routson that he would have "blown [Routson's] brains out" if they were out pheasant hunting. As Button was in handcuffs, this did not give Routson cause for much concern, although he testified that he did take it as a threat. Button also made a derogatory reference to Routson's sons. Button's next shooting statement escalated the effect of the first statement. Button slurred, "If you get me in my car, I'll shoot you." It was after this statement that Routson testified he began to fear for his and his family's safety.

Button used profane language and was generally argumentative throughout their conversation. Button went from idle slumber to asking about Routson's football team preferences, to questioning Routson's occupational choice, to arguing about not being able to gamble, and to insulting members of police in general. The shooting comments were mingled amid his other ramblings. Many of Button's responses to questions posed by Routson were belligerent taunts to kiss his or Routson's ass. Given the entire conversation, Button argues that at the most, the shooting comments show an intent to annoy Routson, not the specific intent to threaten, intimidate, or alarm.

Button also claims that at no time were his actions menacing in any way. However, there is contrary evidence that Button tried to strike at Routson by kicking him from across the desk that separated them during their encounter. This attempt at physical abuse came directly after a second shooting statement made by Button. The jury was able to watch this entire exchange on videotape.

At trial, the jury returned a verdict for the State. Button was convicted of two counts of harassment in the second degree. *Id.* § 708.7(1)(b), (3). Button immediately moved for a judgment of acquittal arguing that the jury's verdict was not supported

by substantial evidence. This motion was denied, and the present appeal followed. On appeal, Button alleges: (1) The jury's verdict was not supported by substantial evidence of specific intent; (2) His counsel was ineffective for failing to address that a defendant cannot commit purposeful contact when he is being held against his will; and (3) His counsel was ineffective for failing to challenge the constitutionality of the statute as it applied to Button.

## II. Preservation of Error/Scope and Standard of Review

■ In order for this court to review alleged deficiencies in the trial proceedings, these errors must be preserved for review. *State v. Ceaser*, 585 N.W.2d 192, 195 (Iowa 1998). The only issue preserved for error is the sufficiency of the evidence to support a jury verdict. This question was preserved by Button's timely motion for judgment of acquittal. *State v. Walker*, 574 N.W.2d 280, 283 (Iowa 1998). The purposeful contact and constitutional violation arguments were not made to the trial court. However, this is not fatal when failure to preserve error on these issues is the fault of trial counsel. *See State v. Gant*, 597 N.W.2d 501, 504 (Iowa 1999). Ineffective assistance claims operate as an exception to our error preservation requirements. *State v. Rubino*, 602 N.W.2d 558, 563 (Iowa 1999). Therefore, we will review the three issues.

### A. Jury Verdict

■ We review a jury verdict for substantial evidence. "In deciding whether the evidence is substantial, we view the evidence in the light most favorable to the State and make all reasonable inferences that may fairly be drawn from the evidence." *State v. McPhillips*, 580 N.W.2d 748, 753 (Iowa 1998); *accord State v. Arne*, 579 N.W.2d 326, 328 (Iowa 1998) ("Our review of the evidence is made in a light most favorable to the jury's verdict."). As such, a challenge of the sufficiency of the evidence is for correction of errors at law.

*McPhillips*, 580 N.W.2d at 753. "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence." *State v. Anderson*, 517 N.W.2d 208, 211 (Iowa 1994). Consequently, where the record contains substantial evidence, "we are bound by the jury's finding of guilt." *State v. Romeo*, 542 N.W.2d 543, 545 (Iowa 1996).

### B. Ineffective Assistance of Counsel

■ The question of counsel's performance is a constitutional claim which this court reviews de novo. *State v. Carter*, 602 N.W.2d 818, 820 (Iowa 1999). The defendant must prove that counsel failed to perform an essential duty and that prejudice was the result. *Id.* Unless the defendant can show both by a preponderance of the evidence, we will affirm. *State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999). To the extent counsel's performance hinges on the interpretation of a statute, our review is for correction of errors at law. *State v. Vargason*, 607 N.W.2d 691, 695 (Iowa 2000).

## III. Issues on Appeal

### A. Substantial Evidence of Intent

■ Harassment is a specific intent crime. Iowa Code § 708.7(1)(b). Button argues he lacked the requisite mental state so that there was not substantial evidence for a jury to find intent. Intent is an elusive element of a crime. *Walker*, 574 N.W.2d at 289. Often, it can be proved only by circumstantial evidence. *Id.* Here, we have a statement from Button's own mouth that he meant what he said. When Button made his first statement regarding blowing Routson's brains out while pheasant hunting, Sergeant Routson responded, "You're threatening me, huh?" Button answered, "Yeah, I would've tried to." Button went further and later told Routson: "I'm gonna remember you." This statement was followed by his second reference to shooting Routson.

The jury was able to watch the videotape of this encounter and hear Button's statements in context. The jury heard Button express an extreme dislike for police officers in general. The jury also heard that all Button really wanted was to be free to gamble. At some point in the conversation, Button became very displeased that he was being held against his will and lashed out. The jury witnessed Button attempt to kick Sergeant Routson. Given this context, it was reasonable for the jury to conclude that Button's menacing statements evidenced an attempt to intimidate Sergeant Routson. Routson testified that he did indeed fear for his safety.

Button argues that because he could not have carried out the threats, *i.e.*, because he was in handcuffs, this fact negates their meaning. Section 708.7 does not require that the harasser have the present apparent ability to carry out the threats. Further, on this type of charge, Button would likely secure bond easily. His statement, "I'm gonna remember you," suggests a plausible future, violent action against Routson.

We have recognized that threats of future violence over the telephone can constitute criminally punishable language. *See State v. McGinnis*, 243 N.W.2d 583, 588–89 (Iowa 1976). Clearly, regarding a threat over the telephone, there is no immediate ability to carry out the threat when the speaker is not even physically present. Similarly, in *State v. Fratzke*, we recognized that harassment of an officer could occur by the mere mailing of an insulting letter. *State v. Fratzke*, 446 N.W.2d 781, 783–85 (Iowa 1989) (reversing the harassment conviction because, although the language fell under the statute, it could be construed to have a "legitimate purpose"). The instant case is even more compelling because Button was nearly able to physically kick Routson after making his threatening statements.

Because we review the evidence in the light most favorable to the jury's verdict, looking at the totality of the evidence, it was reasonable for the jury to find that Button intended to threaten, intimidate, or alarm Sergeant Routson. Therefore, the intent element was supported by substantial evidence.

## B. Ineffective Assistance of Counsel

### 1. Purposeful Personal Contact

Purposeful is described as: "Having a purpose; intentional." American Heritage Dictionary 1006 (2d ed.1985). Personal contact is described by the statute as: "[A]n encounter in which two or more people are in visual or physical proximity to each other ... [including, but not limited to,] physical touching or *oral communication....*" Iowa Code § 708.7(1)(b) (emphasis added). This element of harassment goes more toward Button's control of his own actions than it does to who sought out the interaction. Button was the master of his threatening statements, and he controlled his conduct at all times. He could have chosen to remain silent or speak about innocuous subjects, yet he chose to be aggressive and threatening. Button purposefully expanded his detention into a threatening encounter.

Still, Button questions how a harasser's actions can be purposeful when he is being held against his will. It is true that Button came to Prairie Meadows to gamble. However, once there, he was immediately detained because of his drunken state but not arrested. Sergeant Routson questioned him for several minutes to try to obtain his name and address or a number he could call to secure a ride home for Button. Button had the choice to either answer Routson's questions and be allowed to leave or continue to be argumentative and be forced to stay in Routson's company. His fate was in his own hands. Button purposefully chose to be abusive and uncooperative, which ultimately led to his arrest and the detention where he made his threatening statements.

■ Button argues it was Routson who made purposeful contact, not Button. We are persuaded, however, that Button did commit purposeful acts when: (1) He chose to make the threats, turning the communication into harassment, and (2) He chose to be uncooperative leading to his detention and placing him in a position to make the threats. Because Button's argument has no merit, his counsel was not ineffective for failing to make this challenge. *See Greene*, 592 N.W.2d at 29; *State v. Westeen*, 591 N.W.2d 203, 207 (Iowa 1999).

### 2. Freedom of Speech

■ Ordinarily we will not pass upon constitutional arguments if there are other grounds on which to resolve the case. *Fratzke*, 446 N.W.2d at 783 ("[C]ourt has duty to avoid constitutional questions if merits of a case may be fairly decided without addressing them." (citing *State v. Trucke*, 410 N.W.2d 242, 243 (Iowa 1987))). Because Button is not entitled to relief under the above arguments, we will address his constitutional claim. The *Fratzke* court recognized that the harassment statute contains a "constitutional safety valve" so as to not punish mere unpopular speech. *Id.* That safety valve is the requirement that the threat be "without legitimate purpose" to be actionable as harassment. Iowa Code § 708.7(1)(b).

■ Button made two threats with the intent to intimidate and alarm Routson. Statements about blowing another's brains out and the desire to shoot the object of the threat certainly have no legitimate purpose. In this regard, we have recently concluded: "[T]he First Amendment does not protect speech that constitutes a true threat." *State v. Milner*, 571 N.W.2d 7, 14 (Iowa 1997). It does not matter that the threats were conditional. *United States v. Bellrichard*, 994 F.2d 1318, 1322 (8th Cir. 1993) ("A threat may be considered a 'true threat' even if it is premised on a contingency.").

Button argues that in this context, only fighting words deserve no constitutional protection. The *Milner* holding invalidates that argument. A statute which punishes speech amounting to a true threat also carries no constitutional impediments. *Milner*, 571 N.W.2d at 13–14. In *Milner*, we held that the threat of placing a bomb outside a business where the hearer is present constitutes a true threat. *Id.* at 14 (interpreting the threat of arson statute, Iowa Code section 712.8 (1995)). "A 'true threat' is a statement that an ordinary, reasonable person, familiar with the context in which the statement was made, would interpret as a threat." *Id.* at 13.

■ We employ a totality of the circumstances analysis "to distinguish true threats from crude hyperbole." *Id.* at 15 (citation omitted); *accord McGinnis*, 243 N.W.2d at 589 (regarding threats of physical harm, "[w]hat is controlling is whether a recipient of the communication would interpret it as a threat of injury"). There is evidence that Routson was becoming extremely agitated by Button's behavior. Routson testified that he interpreted both statements made by Button to be threats directed toward him. Routson indicated that following the second threat he felt Button's comments escalated beyond the hyperbole of a drunken individual into a situation of real concern for himself and his family. This second threat also made the first threat seem more serious and plausible.

In *Milner*, we found that the defendant's threatening statements deserved no constitutional protection even though the defendant

relie[d] on our decision in *Fratzke*, in which we held the State could not constitutionally punish an individual for criticizing the conduct of a state trooper, even when that criticism was offensive. In *Fratzke*, we concluded the defendant's statements were not "fighting words," but protected criticism of the government.

In relying on *Fratzke*, Milner overlook[ed] that the statements of dissatisfaction made in that case contained no fighting words or threats. In contrast, Milner's statements were not mere expressions of dissatisfaction with government employees; they were, as the trial court found, threats to place an explosive device in or near the DES building. Milner's statements transcended mere criticism and threatened the personal safety of the DES employees.

*Milner*, 571 N.W.2d at 14 (citations omitted) (distinguishing *Fratzke*, 446 N.W.2d at 784–85). Button attempts to make the same arguments in regard to *Fratzke* that were unsuccessful in *Milner*. We hold that *Fratzke* is equally distinguishable in Button's case.

Further, in *McGinnis*, we held that although the speaker's language did not fall within the unprotected class of obscene language, but were mere threats of physical harm, this language alone was criminally punishable. *McGinnis*, 243 N.W.2d at 589 (interpreting an earlier derivation of the present harassment statute). Conversely, the defendant in *Fratzke* was making political speech and exercising his right to speak against the system. *Fratzke*, 446 N.W.2d at 784–85. No statements Button is charged with saying deserve any protection as political opinion. Threatening to kill another is not political expression. Because there is no legitimate purpose behind the true threats in these circumstances, the fact that the words may not fall under the category of fighting words is of no consequence.

■ In summary, the threats made by Button had no legitimate purpose. True threats are not protected speech even if they do not rise to the level of fighting words. Button's counsel was not ineffective for failing to challenge the statute as it applied to Button because any challenge would have failed. *See Greene*, 592

N.W.2d at 29; *Westeen*, 591 N.W.2d at 207.

**AFFIRMED.**