# IN THE COURT OF APPEALS OF IOWA

No. 17-1217
Filed July 5, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JOHNNIE LEE BOUTCHEE,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Wapello County, Shawn R. Showers,

Judge.

A defendant appeals his convictions for attempted murder, two counts of

willful injury causing serious injury, and going armed with intent. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant

Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

Johnnie Boutchee concedes he assaulted his girlfriend, T.T., and his housemate, J.R. Those assaults led to jury verdicts finding Boutchee guilty of two counts of willful injury causing serious injury, as well as one count each of attempted murder and going armed with intent. On appeal, Boutchee challenges the sufficiency of the evidence for attempted murder and going armed with intent. Boutchee also claims his trial attorney should have objected to expert testimony from J.R.'s treating physician. Finally, Boutchee contests the district court's order that he reimburse court costs without consideration of his reasonable ability to pay. Finding ample evidence to support the jury verdicts and no cause for his counsel to object to the doctor's testimony, we affirm Boutchee's convictions. As for the restitution issue, we conclude Boutchee's complaint is premature.

## I.      Facts and Prior Proceedings

Boutchee called 911 around 5 a.m. on December 5, 2016, telling the dispatcher his girlfriend was having a medical emergency and "needs some help." When paramedics arrived, they discovered two people who needed help. Not only was Boutchee's girlfriend, T.T., bleeding from multiple stab wounds in the bedroom. But in the living room, paramedics found J.R., bloody and barely conscious, on the floor. J.R. had visible head injuries and a laceration on his wrist. Safely in the ambulance, J.R. identified Boutchee as his attacker.

Boutchee and his girlfriend had been out partying the night before. Boutchee was arrested, but returned home early in the morning. T.T. told the jury: "I was still sleeping, and Johnnie B. opened the door of the bedroom, turned the light on, took the bedspread and the sheet off of me, because I had my head

over the bedspread and sheet. He told me to get up." Then Boutchee moved back and forth between the bedroom and living room, where J.R. had been sleeping on the couch. Boutchee took a metal baseball bat from beside the TV stand and twirled it around. Boutchee told J.R. "how much he hated" him and punched J.R. in the face with his fists and "started smashing" him with the bat, according to J.R.'s testimony. J.R. estimated Boutchee hit him more than two dozen times "all over his head." J.R. told the jury:

> So I was in and out of consciousness a lot. I don't know how long I was out, but I—I was woke up to a knife going into my wrist, and Mr. Boutchee said to me, I know you love Jesus, but I love the devil, and I'm here to do the devil's work.

J.R. also recalled Boutchee saying he was going to "do you both" so he could "go to prison forever" and "I'm killing you. Hurry up and die." J.R. pretended to be dead so Boutchee would leave him alone.

Boutchee also showed T.T. a pocket knife with blood on the blade. Boutchee slashed the knife near T.T's throat and stabbed her several times in her neck and head. As she struggled to stay alive, T.T. convinced Boutchee to call 911. The ambulance transported her to the local hospital and then to University Hospitals in Iowa City. She required several weeks of hospitalization, underwent physical therapy, and suffered permanent paralysis on her left side from the stab wounds.

In addition to his head and wrist injuries, J.R. suffered pelvic fractures and a lacerated spleen, which were not detected by medical personnel until he returned to the hospital a week after the assault. When Dr. Gregory Casey saw J.R. in the Ottumwa emergency room on December 11, 2016, he ordered a CAT scan

revealing the pelvic fractures and "a pretty significant" injury to the patient's spleen, which required continuing observation to ensure it did not bleed to the point of requiring surgery.

For his attack on J.R., the State charged Boutchee with attempt to commit murder, a class "B" felony, in violation of Iowa Code section 707.11(1) (2016), and willful injury causing serious injury, a class "C" felony, in violation of Iowa Code section 708.4(1). For his attack on T.T., the State charged Boutchee with a second count of willful injury causing serious injury. For his conduct of shuttling between the two victims—knife in hand—the State charged Boutchee with going armed with intent, a class "D" felony, in violation of Iowa Code section 708.8. The State added habitual-offender enhancements to all the felonies but the attempted murder. A jury returned guilty verdicts on all counts. The district court sentenced Boutchee to a combination of consecutive and concurrent terms of incarceration not to exceed forty years.

In his appeal, Boutchee questions the sufficiency of the State's proof for the elements of going armed with intent and attempted murder. Boutchee's counsel preserved error by moving for judgment of acquittal on the going-armed offense but waived any test of the attempted-murder count. Accordingly, Boutchee pursues his challenge to the latter conviction by alleging ineffective assistance of counsel. Boutchee also argues counsel was remiss in not objecting to Dr. Casey's opinion that J.R.'s pelvic and spleen injuries were consistent with being assaulted with a baseball bat. Finally, Boutchee disputes the court's order that he repay court costs—without a finding of his reasonable ability to pay.

## II.     Scope and Standards of Review

Because Boutchee's complaints about the competency of his trial counsel spring from the Sixth Amendment, we review them de novo. *See State v. Canal,* 773 N.W.2d 528, 530 (Iowa 2009). Often we reserve ineffective-assistance claims for postconviction-relief proceedings so the parties may develop the record. *State v. Brubaker*, 805 N.W.2d 164, 170 (Iowa 2011). But where enough facts appear in the trial transcript to settle the dispute on direct appeal, we will do so. *Id.* at 171. Here, the record is adequate to address counsel's performance.

Boutchee bears the burden to show his attorney failed to perform an essential duty and prejudice resulted. *See State v. Button*, 622 N.W.2d 480, 483 (Iowa 2001). If he cannot show both prongs by a preponderance of the evidence, we will affirm. *See id.* We review challenges to the sufficiency of the evidence for errors at law, viewing the totality of the evidence in the light most favorable to the verdicts. *See Button*, 622 N.W.2d at 484. We review restitution orders for correction of errors at law. *State v. Jose,* 636 N.W.2d 38, 43 (Iowa 2001).

## III.    Legal Analysis

### A. Did the State offer substantial evidence to support the jury's verdict for going armed with intent?

To convict Boutchee of going armed with intent, the State had the burden to prove, beyond a reasonable doubt, that (1) Boutchee was armed with a knife; (2) the knife was a dangerous weapon; (3) Boutchee had the specific intent to use the knife against another person; and (4) while armed with the knife Boutchee moved from one place to another. *See* Iowa Code § 708.8. On appeal, Boutchee contests only the fourth element—his movement. "Going" armed "necessarily

implicates proof of movement." *State v. Ray*, 516 N.W.2d 863, 865 (Iowa 1994). But that movement need not cover a great distance. *See, e.g.*, *State v. Harris*, 891 N.W.2d 182, 187 (Iowa 2017) (upholding conviction based on transition from inside bar to just outside building); *State v. Pearson*, 804 N.W.2d 260, 265 n.1 (2011) (finding movement across kitchen generated jury question); *State v. Ray*, 516 N.W.2d 863, 865 (Iowa 1994) (finding movement from house to front yard sufficient).

Boutchee argues the State's evidence of movement was insubstantial because he was not pursuing a victim when he drifted between the bedroom and the living room, and the evidence suggested he consistently carried the pocket knife with him.[1] We do not find his arguments convincing. As the State argues, "[i]t does not matter which victim Boutchee attacked first—either way, the evidence showed that he formed a specific intent to inflict injury using the knife and then brought it from one room to the other." The district court properly overruled the motion for judgment of acquittal on this count. *See State v. Outlaw*, No. 06-0063, 2006 WL 3313942, at *3-4 (Iowa Ct. App. Nov. 16, 2006) (upholding going-armed conviction where weapon was "available for immediate use").

---

[1] Boutchee cites dicta from our unpublished opinion in *State v. Smith*, No. 26-1201, 2017 WL 2181621, at *2-3 (Iowa Ct. App. May 17, 2017), for the proposition that a defendant who possesses a weapon during an entire argument has not committed the offense of going armed. But in that case, the defendant shot at her boyfriend through a closed door as he left the apartment. *Id.* at *3. If she did not retrieve the gun from her closet during the argument, the guilty-plea record showed no movement to satisfy a factual basis. *Id.* Here, Boutchee shuttled between two victims in two different rooms—cutting them both with the knife. The element of movement was not in doubt.

**B. Was counsel ineffective for not moving for judgment of acquittal on the attempted-murder count?**

Boutchee argues his attorney breached an essential duty by not seeking a judgment of acquittal on the charge of attempted murder. Boutchee insists he suffered prejudice by counsel's omission because the State offered insufficient evidence of two elements. To convict Boutchee of attempted murder, the State was required to prove the following elements: (1) Boutchee assaulted J.R.; (2) By his acts, Boutchee expected to set in motion a force or chain of events which would cause or result in the death of J.R.; and (3) when Boutchee acted, he specifically intended to cause the death of J.R. *See* Iowa Code § 707.11; *State v. Young*, 686 N.W.2d 182, 185 (Iowa 2004). It is the State's proof of the second and third elements that Boutchee now finds wanting. But if the record reveals substantial evidence, counsel's failure to raise the issue in a motion for judgment of acquittal could not be prejudicial. *See State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004). Evidence is substantial if it would convince a rational jury the accused is guilty beyond a reasonable doubt and it must do more than raise suspicion or speculation. *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005).

Boutchee focuses on J.R.'s recounting of the violent assault, asserting the victim's "credibility was called into question." Boutchee highlights inconsistencies in the testimony from several witnesses for the State. But any nicks in the veracity of a witness are left to the inspection of the jury. *See State v. Sauls*, 356 N.W.2d 516, 522 (Iowa 1984) ("Given the role of the jury in our system of justice, we must accept the ability of that institution to resolve the difficult issues of credibility which are presented."); *see also State v. Paredes*, 775 N.W.2d 554, 567 (Iowa 2009) ("A

court must be careful not to usurp the role of a jury by making credibility determinations that are outside the proper scope of the judicial role.").

The jury was entitled to believe J.R.'s recollection of what Boutchee said during the attack. For instance, Boutchee expressed his hatred of J.R. and described his own mission as "the devil's work." Boutchee welcomed the possibility of a lengthy prison sentence for his acts and urged J.R. to "hurry up and die." Boutchee's own words exposed his expectation of setting in motion a chain of events that could lead to J.R.'s death, as well as his specific intent to cause that death. And the repeated blows to J.R.'s head and the slashing of his wrist—both locations on the body vulnerable to mortal injuries—qualified as overt acts in furtherance of Boutchee's specific intent to kill J.R. The State may establish an actor's specific intent by circumstantial as well as direct evidence. *See State v. Crandall*, 288 N.W. 85, 88–89 (Iowa 1939) (upholding assault-with-intent conviction based on threatening statements attributed to defendant, as well as implying defendant intended the natural consequences of his unlawful acts). Finding plentiful evidence of Boutchee's intent to kill J.R. and Boutchee's multiple acts in furtherance of that intent, we conclude counsel's failure to move for judgment of acquittal on the attempted-murder count did not result in actual prejudice to his client's defense.

**C. Was counsel ineffective for not objecting to Dr. Casey's opinion?**

Boutchee believes the doctor who diagnosed J.R.'s pelvic and spleen injuries gave improper expert testimony and contends his trial attorney performed below expectations by not lodging an objection. The prosecutor asked Dr. Casey

if J.R.'s injuries were "consistent with having been received in an assault." The doctor answered "Yes." The doctor acknowledged J.R. reported tripping the day he came to the emergency room but opined the patient's injuries did not result from the fall, explaining, "It's almost impossible to fall from—you know, if I'm standing up, my center of gravity is about three feet from the ground. It's hard to fall from three feet to the ground and develop enough force to cause pelvic fractures. That's inconceivable to me."

Boutchee argues the doctor's testimony was impermissible because it "was, in effect, an expert opining that [J.R.] was to be believed." Boutchee cites to our supreme court's trilogy of cases on expert witness vouching. *See State v. Brown*, 856 N.W.2d 685 (Iowa 2014); *State v. Dudley*, 856 N.W.2d 668, 676-77 (Iowa 2014); *State v. Jaquez*, 856 N.W.2d 663 (Iowa 2014). But those cases involved experts commenting—directly or indirectly—on the credibility of accusers in child sexual abuse prosecutions. *See Brown*, 856 N.W.2d at 689 (holding expert impermissibly vouched for witness's credibility by opining that "investigation [was] clearly warranted"); *Dudley*, 856 N.W.2d at 677 (holding psychologist indirectly vouched for child's credibility when expert testified child's symptoms were consistent with sexual abuse trauma); *Jaquez*, 856 N.W.2d at 665 (concluding expert indirectly vouched for witness in stating child's demeanor was consistent with being repeatedly traumatized). The problem in all three cases was the appearance of a scientific "stamp of approval" given to the version of events offered by the child witness, "even though an expert cannot accurately opine when a witness is telling the truth." *See Dudley*, 856 N.W.2d at 677.

Here, Dr. Casey did not offer an opinion, directly or indirectly, on the truthfulness of J.R.'s testimony. J.R. told the jury he only remembered Boutchee hitting his head with the baseball bat but, because he suffered injuries to his pelvis and spleen, J.R. believed that while he was unconscious Boutchee struck him "all over"; he had no personal recollection of an attack to his chest, abdomen, and pelvis. Dr. Casey noted on December 11 that J.R. had bruising on his body that was "more than several days old. He had bruising to his chest wall, to his rib cage over where his spleen was, and bruising to his pelvis, and that bruising was not acute. That was days old. You can tell that based upon the coloration." Because J.R. did not venture an independent recollection of being struck in the chest or abdomen, Dr. Casey's opinion that J.R.'s pelvic and spleen injuries were consistent with an assault corroborated the circumstantial evidence, not the credibility of J.R.'s testimony. Boutchee's attorney had no cause to urge a useless objection to the doctor's testimony. *See Ray*, 516 N.W.2d at 866 ("It is axiomatic that ineffectiveness of counsel may not be predicated on the filing of a meritless motion.").

### D. Did the district court properly order restitution for court costs?

As his final assignment of error, Boutchee claims the district court erred in ordering him, under Iowa Code section 910.3, to pay court costs "in an amount that will be later certified by the Clerk of Court." He asserts his obligation totals $4060.75, citing Iowa Courts Online. Boutchee argues we should vacate that portion of the judgment order because the district court did not determine whether he had the reasonable ability to pay that amount. *See* Iowa Code § 910.2(1) (limiting restitution for court costs to defendant's reasonable ability to pay).

The State tags Boutchee's concerns as premature and asserts the checked box requiring repayment of court costs was not a "final restitution order" under *State v. Swartz,* 601 N.W.2d 348, 354 (Iowa 1999), and *State v. Jackson*, 601 N.W.2d 354, 357 (Iowa 1999). We agree Boutchee's challenge is governed by *Jackson* and *Swartz*. Here the restitution order was incomplete; the district court was not required to determine Boutchee's ability to pay until the plan of restitution was final. *See State v. Alexander*, No. 16-0669, 2017 WL 510950, at *3 (Iowa Ct. App. Feb. 8, 2017). Moreover, Iowa Code section 910.7 allows an offender who is dissatisfied with the amount of restitution required by the plan to petition the district court for a modification. *See Jackson*, 601 N.W.2d at 357. Boutchee's restitution issue is not ready for review.

**AFFIRMED.**