# IN THE COURT OF APPEALS OF IOWA

————————————

No. 24-1443
Filed January 28, 2026

————————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Allen Albert Carmichael,**
Defendant–Appellant.

————————————

Appeal from the Iowa District Court for Guthrie County,
The Honorable David Faith, Judge.

————————————

**AFFIRMED**

————————————

Richard Hollis, Des Moines, attorney for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney
General, attorneys for appellee.

————————————

Considered without oral argument
by Ahlers, P.J., Buller, J., and Telleen, S.J.
Opinion by Telleen, S.J.

1

**TELLEEN, Senior Judge.**

Allen Albert Carmichael appeals from his conviction and sentence for stalking by using a technological device. He argues insufficient evidence supports his conviction, the district court erred in failing to give a requested jury instruction, and the district court abused its discretion in failing to grant him a deferred judgment. Because sufficient evidence supports Carmichael's conviction and the district court did not err or abuse its discretion, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

Carmichael and his wife, Melinda, were in the midst of marriage dissolution proceedings at the time of the events leading to this case. Melinda moved out of the family home in December 2022, and Carmichael filed for dissolution in July 2023. Following his filing of the dissolution petition, Carmichael made many threatening comments to Melinda through voicemail, text, and email, some of which identified her specific location:

> I like targets let's see who wins. Be careful of the people hiding in the dark. So it's TAG I'm it and looking for you.

> Running away won't help you moving far away might but as long as you are around here I will know enough to find you.

> [B]e ready to dance and hide better because I know you're in urbandale and the trailer park and I know a couple of other spots but I'm sure you probably weren't driving it that day but maybe.

> I'm coming to Waukee, so fucking watch out. I might be lurking in the dark.

> Play with me, see what happens, let's do it. Let's do the dance. . . . I ain't got nothing fucking to lose.

> Don't make me fucking come over there and find you.

Melinda did not know how Carmichael knew her specific locations since she never told him. Convinced that Carmichael was stalking her, Melinda told a friend about the interactions. Melinda's friend told her how to activate Apple AirTag[1] notifications on her phone so that Melinda would get notified if an AirTag was near her. On the next day that Melinda used her car, her iPhone notified her of a nearby AirTag while she was walking to her vehicle. Following an intensive search by Melinda and a few friends, Melinda located an AirTag attached to the undercarriage of her car, on a support beam under the trunk. The AirTag was lodged in a black magnetic puck which was stuck to the beam. The AirTag was registered to Carmichael's phone number and did not belong to Melinda; she testified she did not own any AirTags and had only previously heard of their existence once on the news.

Melinda contacted the police once she discovered the AirTag. She then asked Carmichael if he had placed the AirTag on the vehicle. He denied do so, explaining "I've got fucking eyes everywhere" for why he knew her location. When contacted by a sheriff's deputy, Carmichael admitted that geofence data would place him at Melinda's car late at night in Waukee because her car was "legally half [his property]." He further admitted the AirTag would be registered to him through Apple. Apple's records confirmed that the AirTag was registered to Carmichael.

The State charged Carmichael via trial information with stalking—using technological device, in violation of Iowa Code section 708.11(3)(a)(4) (2023). Following jury trial, Carmichael was convicted as charged. The district court sentenced Carmichael to a ten-year prison term. The court

---

[1] An AirTag is a tracking device developed by Apple which allows an AirTag owner to place the AirTag in or on an object and track that object's movements and location from the owner's Apple device, e.g., an iPhone.

suspended the prison term and placed Carmichael on probation for three years. Carmichael now appeals his conviction and sentence.

## STANDARD OF REVIEW

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). "We will uphold the verdict . . . if substantial evidence supports it." *Id.* Likewise, we uphold denials of motions for judgment of acquittal if substantial evidence supports conviction.[2] *State v. Boleyn*, 547 N.W.2d 202, 204 (Iowa 1996). Evidence is substantial if it could "convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 972 N.W.2d 189, 203 (Iowa 2022). "We view the evidence in the light most favorable to the verdict and accept as established all reasonable inferences tending to support it." *State v. Gay*, 526 N.W.2d 294, 295 (Iowa 1995).

"We review challenges to jury instructions for correction of errors at law." *State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018) (cleaned up).

Challenges to sentencing decisions are reviewed for an abuse of discretion. *State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003). "An abuse of discretion is found when the court exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *Id.*

---

[2] We note that, in his brief, Carmichael separately challenges his conviction due to (1) insufficient evidence and (2) the district court's denial of his motions for judgment of acquittal. Because both claims are dependent on substantial evidence supporting Carmichael's conviction, we will address both issues under the "Sufficiency of the Evidence" section below.

# DISCUSSION

## I.    Sufficiency of the Evidence

Carmichael first challenges the sufficiency of the evidence supporting his conviction.  The jury was instructed that the State had to prove:

> 1. On or about September 14, 2023, Mr. Carmichael purposefully engaged in a course of conduct directed at Melinda Carmichael that would cause a reasonable person to fear bodily injury to, or the death of Melinda Carmichael.

> 2. Mr. Carmichael knew or should have known that Melinda Carmichael would be placed in reasonable fear of bodily injury or death to herself.

> 3. Mr. Carmichael's course of conduct caused Melinda Carmichael to fear bodily injury or death to herself.

> 4. Mr. Carmichael utilized a technological device during his course of conduct involving Melinda Carmichael.

Carmichael argues that he made no statements that would cause Melinda to reasonably fear bodily injury or death.  He addresses each email and message in isolation, providing questionable explanations[3] for their context without addressing the sheer volume of threatening statements.  It is further uncontested that Carmichael knew Melinda's specific location and flaunted that knowledge to her in texts, emails, and calls despite her having never told him where she was.  Carmichael told Melinda to "fucking watch out" and "be ready to dance and hide" because "[he] might be lurking in the dark," all while reciting her specific location to her.  A reasonable person

---

[3] One such example is Carmichael's explanation that his email informing Melinda that he would "do what I need to do" was not a threat against Melinda but rather a reference to his own suicide.  Another example is his claim that his warning to Melinda to "[b]e careful of people hiding in the dark.  So it's TAG I'm it and looking for you" was simply a reference to "phone tag."

could conclude that Carmichael's intention by combining those threatening statements while taunting Melinda with his knowledge of her location was to place her in reasonable fear of injury or death. Since Melinda would have no reason to expect Carmichael to always know her location, a reasonable person could feel fear from those statements.

Melinda's reasonable fear of injury is further reinforced through her testimony to such, which the jury was free to credit. As Melinda testified, "I was constantly looking over my shoulder" and "I was scared for my life" from Carmichael "blowing up" her phone, text messages, and email. At one point Carmichael told Melinda "he was going to kill himself" and that "he wanted [Melinda] to come over and [they] would do it together." Melinda felt she could not drive her car since Carmichael told her "he's watching [her] car." And she even testified to a fear of staying in her own home, choosing to room at a friend's home for some time.

Carmichael additionally asserts that the evidence "merely establish[es] that an AirTag tracking device was put on a vehicle, that the AirTag belonged to [] Carmichael, [Carmichael]'s contact information, the date the AirTag was sent to [Carmichael], and that the records Apple provided to [law enforcement] were true and correct." He argues that this evidence, "without any additional context, do[es] not prove any of the elements for the charged offense." We disagree. Collectively, this evidence overwhelmingly substantiates the State's theory that Carmichael placed the AirTag on Melinda's vehicle to track her and provides the "additional context" Carmichael asks us to consider.

The arguments that Carmichael presents to contest a finding that he placed the AirTag on Melinda's vehicle are not convincing. This includes his claim that the photo exhibits do not clearly show what model of vehicle

on which the AirTag was found. But Melinda testified that the AirTag was attached to her vehicle. Further, the jury was free to discount Carmichael's self-serving and dubious testimony that various friends were keeping him updated on Melinda's location by spotting her car when it was in their vicinity. Sufficient evidence supports Carmichael's conviction.

## II.    Requested Instruction

Carmichael next argues the district court erred in failing to give his requested jury instruction which defined a "true threat" and instructed jurors not to convict him unless it found that his statements consistent with that definition. A district court is required to give a requested instruction if it states a correct rule of law as applied to the facts of the case "and is not embodied in other instructions." *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016).

Carmichael argues that defining a "true threat" would have helped protect his First Amendment rights under the United States Constitution. While Carmichael emphasizes the importance of protecting his First Amendment rights, he fails to explain how the instructions actually given failed to protect that right. Speech that "an ordinary, reasonable person, familiar with the context in which the statement was made, would interpret as a threat" is a "true threat" not protected under the First Amendment. *State v. Button*, 622 N.W.2d 480, 485 (Iowa 2001) (quoting *State v. Milner*, 571 N.W.2d 7, 13 (Iowa 1997)). Indeed, Instruction 15 required that the State had to prove Carmichael "purposefully engaged in a course of conduct directed at Melinda [] that would cause a reasonable person to fear [her] bodily injury [] or [her] death . . . ." Thus, because Carmichael's requested "true threat" instruction was embodied in Instruction 15, the district court did not err in failing to give the requested instruction.

## III. Sentencing

Carmichael contends the district court abused its discretion in declining to give him a deferred judgment. When the district court issues a statutorily permitted sentence, that sentence "is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). Carmichael argues the court failed to account for his lack of "significant criminal history," his "stable housing" and employment, the unique circumstances of the crime, and his engagement with mental-health treatment. But in its statement of reasons for the sentence, the district explained that lack of remorse outweighed the factors favoring a deferred judgment:

> This is a difficult one, because, on the one hand, we have a presentence investigation from the Department of Corrections that assesses that you are at low risk of recidivism for violence and estimating that you can successfully be supervised in the community. On the other hand, as the State has pointed out, you have not admitted guilt. We had to go through a jury trial, and the lack of admission does raise some concerns regarding your ability to avoid repeating a crime that you don't admit that you did. In light of those competing factors, the Court is going to take the middle ground today, which is that I am going to sentence you to prison, but I am going to suspend the sentence. What that means is you will be a felon. You'll have that hanging over your head, and you will have the ten-year sentence hanging over your head, if you commit any violations of the terms of your probation. But I am going to accept the Department of Corrections' assessment that they can supervise you, and trust that you will fully cooperate with them for your own self-interest.

"A sentencing court may properly consider a defendant's lack of remorse when choosing a sentence that will provide for the defendant's rehabilitation and protect the public from further offenses by the defendant, so long as the court's lack-of-remorse finding is not based on the defendant's

decision to stand trial." *State v. Knight*, 701 N.W.2d 83, 89 (Iowa 2005). Here, the district court clarified that Carmichael's lack of remorse raised concerns about his chances for recidivism, which justified a sentence landing in the "middle ground." There was no abuse of discretion by the district court during sentencing. We affirm.

**AFFIRMED.**