# In the Iowa Supreme Court

No. 25–0306

Submitted March 25, 2026—Filed May 22, 2026

**State of Iowa,**

Appellee,

vs.

**Timothy Lee Hall Jr.,**

Appellant.

Appeal from the Iowa District Court for Guthrie County, William A. Price, senior judge.

A criminal defendant challenges his conviction of harassment in the second degree as well as the entry of a no-contact order. **Affirmed.**

May, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Allison Linafelter and Corey Engle (until withdrawal), Assistant Appellate Defenders, for appellant.

Brenna Bird, Attorney General, and David Banta, Assistant Attorney General, for appellee.

**May, Justice.**

Timothy Hall Jr. appeals his conviction for harassment in the second degree and the entry of a no-contact order. Hall raises two arguments. First, Hall argues that he can't be convicted of harassment because he didn't *initiate* the encounter during which Hall harassed his victim. Second, Hall argues that his harassment conviction was not enough—on its own—to justify the entry of a no-contact order to protect Hall's victim. We reject both of Hall's arguments, and we affirm.

## I. Factual and Procedural Background.

Like many Iowa communities, Guthrie Center has a Casey's General Store. According to the evidence at trial, Hall visited that Casey's on two consecutive days.

During the first visit, Hall got into an argument with a woman in the parking lot. A Casey's employee saw the argument and told her manager about it. The manager was Joshua Vanhorn.

The next morning, Hall made his second visit. This time, Hall entered the Casey's to purchase a beverage. An employee recognized Hall and alerted Vanhorn. Vanhorn approached Hall near the cooler doors in the back of the store. The two men stood about two feet away from one another. Vanhorn asked Hall to leave. But Hall did not immediately comply. Instead, Hall cursed at Vanhorn. Hall also threatened Vanhorn by saying something like, "Come outside and I'll bust your lip." Hall was still cursing when he finally left.

Following an investigation, the Guthrie County Sheriff's Department filed a complaint charging Hall with harassment in the second degree under Iowa Code sections 708.7(1)(*b*) and 708.7(3)(*a*) (2024). Soon after, the district court issued a temporary no-contact order that restrained Hall and protected Vanhorn.

Following a bench trial, Hall was convicted of harassment in the second degree. The same day, Hall was sentenced to one year in jail, suspended with probation. The sentencing order listed some specific conditions of probation. One of the conditions was: "Abide by the separate No Contact Order issued herein."

After the sentence was read, there was a break in the proceedings. Then the sentencing judge issued a new five-year no-contact order to Hall. The judge explained it this way:

> THE COURT: Mr. Hall, I handed you a no contact order between you and Joshua Vanhorn. That no contact order replaces the earlier no contact order. This is effective till February 17, 2030. Five years. And that's no contact in person, by phone, in writing, voicemail, email, or through third parties.
>
> Joshua -- Joshua Vanhorn cannot give you permission to violate this order. If you have any contact with him in any way, you are subject to immediate arrest and could be ordered to jail for up to 180 days for each violation of the no contact order. That could also become a violation of your probation, causing you to serve the one-year jail sentence.
>
> Do you have any questions about that?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Okay. Now we'll close the record.

**II. Issues on Appeal.**

In this appeal, Hall raises two issues. First, Hall contends that there is insufficient evidence to support his harassment conviction. Second, Hall challenges the imposition of the five-year no-contact order.

The State rejects Hall's contentions. In addition, the State claims we cannot reach Hall's no-contact order challenge because he did not preserve error and because he did not file a separate appeal.

**III. Merits.**

**A. Sufficiency of the Evidence.** We start with Hall's sufficiency challenge, which we review for correction of errors at law. *State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021).

Our inquiry begins with Iowa Code section 708.7, our harassment statute. Three parts of the statute are relevant here. First, under subsection (1)(*b*), "A person commits harassment when the person, purposefully and without legitimate purpose, has personal contact with another person, with the intent to threaten, intimidate, or alarm that other person." *Id.* § 708.7(1)(*b*). Next, under subsection (8)(*b*), " *'Personal contact'* means an encounter in which two or more people are in visual or physical proximity to each other." *Id.* § 708.7(8)(*b*). The same subsection adds that personal contact "does not require a physical touching or oral communication, although it may include these types of contacts." *Id.* Finally, under subsection (3)(*a*), "A person commits harassment *in the second degree* when the person commits harassment involving a threat to commit bodily injury . . . ." *Id.* § 708.7(3)(*a*) (emphasis added). We have said that these provisions create a specific-intent crime. *In re D.S.*, 856 N.W.2d 348, 352 (Iowa 2014).

All things considered, then, the State was required to prove that (1) Hall "purposefully and without legitimate purpose" had "personal contact" with Vanhorn, (2) Hall threatened to cause bodily injury, and (3) Hall did so with the specific intent to "threaten, intimidate, or alarm" Vanhorn. Iowa Code § 708.7(1)(*b*), (3)(*a*), (8)(*b*); *see also Lacey*, 968 N.W.2d at 802–03 (approving a marshaling instruction for the same statutory provisions).

In considering Hall's substantial-evidence challenge, we must apply our traditional, "highly deferential" standard of review. *Lacey*, 968 N.W.2d at 800. If

the verdict against Hall is supported by substantial evidence, we will affirm. *Id.* Evidence is substantial if it is sufficient to "convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Webb*, 648 N.W.2d 72, 75–76 (Iowa 2002)). In considering whether evidence is substantial, we view "the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Id.* We will not say that evidence is "insubstantial merely because we may draw different conclusions from it." *Id.* at 800–01 (quoting *Brokaw v. Winfield–Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010)). The central "question is whether [the evidence] supports the finding actually made, not whether the evidence would support a different finding." *Id.* (quoting *Brokaw*, 788 N.W.2d at 393).

Now we turn to Hall's particular arguments. On appeal, Hall does not dispute that he threatened Vanhorn with bodily harm, a "bust[ed]" lip. Even so, Hall *does* dispute that his threat was made as part of the crime of harassment. To prove harassment, Hall argues, the State had to show "that Hall purposefully sought out an encounter with Van[h]orn and that he had formed the intent to threaten, intimidate, or alarm the victim when he did so." And the State could not make that showing, Hall argues, because it was *Vanhorn—not* Hall—who initiated their encounter in the back of the Casey's.

We disagree. Viewing the evidence in the light most favorable to the State, we think there was substantial evidence that Hall purposefully had personal contact with Vanhorn with the intent to threaten, intimidate, or alarm Vanhorn. *See* Iowa Code § 708.7(1)(*b*), (3)(*a*), (8)(*b*). We acknowledge that the store manager, Vanhorn, approached Hall first. He approached Hall to ask him to leave. Once that request was made, Hall's only legitimate choice was to leave the

store. But Hall made a different choice. Hall chose not to leave. Instead, he chose to continue standing two feet away from Vanhorn. And while he continued to stand two feet away from Vanhorn, Hall "lash[ed] out" at Vanhorn, as one witness put it. Hall's lashing out included Hall's threat to "bust" Vanhorn's lip. From all of this, the trial court could reasonably infer that Hall purposefully had personal contact with Vanhorn with the intent to threaten, intimidate, or alarm Vanhorn. Although Hall did not *initiate* the encounter with Vanhorn, Hall purposefully *had* personal contact with Vanhorn by continuing to confront him and by threatening him—instead of just leaving as Vanhorn had requested. That was enough to satisfy the plain language of Iowa Code section 708.7(1)(*b*), which only requires a harasser to "*ha*[*ve*] personal contact" with the victim, and which says nothing about who must *initiate* the encounter. (Emphasis added.) *Cf. State v. Stephenson*, 608 N.W.2d 778, 784 (Iowa 2000) (en banc) (affirming a harassment-by-telephone-communication conviction and noting that the plain language of section 708.7(1)(*a*)(1) prohibits harassing communications "regardless of who initiates the contact between the victim and an accused").

Hall claims a different outcome is required by *In re D.S.*, 856 N.W.2d 348. We disagree.

It is true, as Hall notes, that *D.S.* repeatedly mentions the question of whether the perpetrator there had "initiated" or "sought out" personal contact with the victim. *Id.* at 354. And we recognize, as did the *D.S.* court, that harassment *often* involves an encounter that was started by the harasser. *See id.*; *see also State v. Evans*, 671 N.W.2d 720, 722–25 (Iowa 2003) (finding purposeful personal contact where the defendant went to the victim's house uninvited after being rebuffed repeatedly by the victim); *State v. Evans*, 672 N.W.2d 328, 330–31 (Iowa 2003) (finding purposeful personal contact where the

defendant approached a woman in a store parking lot to examine her shoes); *State v. Reynolds*, 670 N.W.2d 405, 410 (Iowa 2003) (finding purposeful personal contact where the defendant followed the victim in his SUV then approached the victim in a store). Perhaps that is the *ordinary* way in which harassers "purposefully . . . ha[ve] personal contact" with their victims. Iowa Code § 708.7(1)(*b*).

But that is not the only way. Rather, as *D.S.* recognized, purposeful personal contact can happen in at least two different ways. 856 N.W.2d at 353. On one hand, as *D.S.* explained, "[w]e have previously found purposeful personal contact where a defendant intentionally placed himself in contact with the victim." *Id.* As just mentioned, that seems to be the typical scenario.

On the other hand, though, *D.S.* explained that purposeful personal contact can *also* occur where a victim *initially* contacts a defendant for a legitimate purpose *and then* the "defendant purposefully engage[s] in conduct" that leads to harassing "personal contact with the victim." *Id.* As an example, the *D.S.* court pointed to our opinion in *State v. Button. Id.* In *Button*, a drunken defendant went to a casino. 622 N.W.2d 480, 482 (Iowa 2001) (en banc). Casino security called the police. *Id.* A police officer responded to the call. *Id.* The officer—who would ultimately become the victim of harassment—initiated contact with the defendant. *Id.* First, the officer initiated contact by asking the defendant questions and offering him a ride home. *Id.* Then, after the defendant chose not to cooperate, the officer initiated further contact by arresting the defendant, handcuffing him, and placing him in a police car. *Id.* It was only then—when the defendant was handcuffed and in the back of the police car— that the defendant made threatening statements to the officer. *Id.* On the basis of those threatening statements, the defendant was convicted of harassment in

the second degree. *Id.* On appeal, the defendant argued that he could not be guilty of harassment because it was *the officer* who had made purposeful contact with him, not the other way around. *Id.* at 484–85. The *Button* court rejected this argument. *Id.* Here's an excerpt from the court's reasoning:

> [The officer] questioned [the defendant] for several minutes to try to obtain his name and address or a number he could call to secure a ride home for [the defendant]. [The defendant] had the choice to either answer [the officer's] questions and be allowed to leave or continue to be argumentative and be forced to stay in [the officer's] company. His fate was in his own hands. [The defendant] purposefully chose to be abusive and uncooperative, which ultimately led to his arrest and the detention where he made his threatening statements.

*Id.* at 484.

Thus, as *D.S.* explained, *Button* illustrates the kind of harassment that occurs when an innocent victim (the officer) initiates contact with the harasser, and then the harasser "purposefully engage[s] in conduct leading to [other] personal contact" that constitutes harassment. *D.S.*, 856 N.W.2d at 354 (describing *Button*).

Hall's case falls squarely into this *Button* category of harassment. *See* 622 N.W.2d at 484. Like in *Button*, Hall did not initiate contact with the victim, Vanhorn. Like in *Button*, it was the victim—Vanhorn—who initiated contact with Hall. Like in *Button*, Hall was given a choice to depart from Vanhorn's company without incident. Like in *Button*, Hall's "fate was in his own hands." *Id.* Like in *Button*, Hall chose not to leave without incident. Instead, like in *Button*, Hall chose to prolong his contact with Vanhorn. And like in *Button*, Hall used that prolonged encounter as an opportunity to harass Vanhorn by making threatening statements. Therefore, as in *Button*, Hall's conviction should be affirmed even though Hall's victim initiated their discussion. *See id.* at 484–85; *see also State v. Benson*, No. 04–1036, 2006 WL 1229992, at *5–6 (Iowa Ct. App.

Apr. 26, 2006) (citing *Button* and affirming harassment conviction where a victim "initiated the personal contact" through actions that "put the parties in close proximity of each other" but then the defendant verbally threatened the victim); *cf. Stephenson*, 608 N.W.2d at 784 (observing that if the legislature had intended to limit harassment under section 708.7(1)(*a*)(1) to situations in which the defendant initiated contact, the legislature "would have employed language of limitation").

Because the verdict against Hall is supported by sufficient evidence, we reject Hall's challenge to the verdict.

**B. No-Contact Order.** Hall also challenges the sentencing court's entry of a five-year no-contact order to protect Vanhorn. Before considering the merits of that challenge, though, we first address the State's procedural objections.

1. *Procedure.* The State claims that because Hall did not challenge the no-contact order in district court, Hall failed to preserve error on his current challenges. The State also argues that the no-contact order is not subject to review on direct appeal; rather, it must be appealed separately.

We disagree. We have said that a no-contact order is "subject to review on direct appeal" if the district court incorporated it by reference into the sentencing order. *State v. Rasmussen*, 7 N.W.3d 357, 365 (Iowa 2024). Here, the sentencing order incorporated the no-contact order through special terms of probation that required Hall to comply with the no-contact order. Therefore, Hall did not need to pursue a separate appeal. Also, although Hall did not raise his no-contact order challenges before the district court, we will still consider them if they are the kinds of challenges for which we excuse error preservation in the context of sentencing. *State v. Kieffer*, 17 N.W.3d 651, 661–62 (Iowa 2025); *see also State v. Lynch*, No. 20–0075, 2021 WL 2453362, at *2–3 (Iowa Ct. App. June 16, 2021)

(citing *State v. Grover*, No. 14–0072, 2014 WL 7343514, at \*2 (Iowa Ct. App. Dec. 24, 2014), for the proposition that "a defendant may challenge the imposition or extension of a no-contact order under chapter 664A without having first raised the issue before the district court"). As will be explained further, Hall's challenges concern the district court's chosen disposition (the entry of the no-contact order) and the reasons given for that disposition. When challenges of this sort are raised in the sentencing context, they are typically exempted from our error preservation requirements. *See State v. Hallock*, 31 N.W.3d 36, 41–42 (Iowa 2026). And although there are exceptions, *see id.* at 41–43, none of them appear to be relevant here. So we consider Hall's challenges.

2. *Merits.* Now we turn to the merits of Hall's challenges to the no-contact order. We review Hall's statutory interpretation argument for errors at law. *State v. McCollaugh*, 5 N.W.3d 620, 623 (Iowa 2024). We review Hall's due process argument de novo. *See State v. Cahill*, 972 N.W.2d 19, 27 (Iowa 2022).

a. *Overview.* We start with a brief overview of Iowa Code chapter 664A, which governs criminal no-contact orders. Chapter 664A authorizes three main types of no-contact orders. First, Iowa Code section 664A.3(1) requires the entry of a temporary no-contact order if four things happen: (1) the defendant is "taken into custody" or "arrested" for certain specified offenses or violations, (2) the defendant "is brought before a magistrate for initial appearance," (3) the magistrate "finds" that there is probable cause that certain specified offenses or violations have occurred, and (4) the magistrate "finds" that the "presence of or contact with the defendant poses a threat to the safety of the alleged victim" or other specified persons. This kind of no-contact order was entered against Hall at the outset of this case. Orders of this kind remain "in force 'until . . . modified or terminated by subsequent court action' or until the case reaches final

resolution." *Ostergren v. Iowa Dist. Ct.*, 863 N.W.2d 294, 298 (Iowa 2015) (omission in original) (quoting Iowa Code § 664A.3(3) (2013)).

Next, Iowa Code section 664A.5 authorizes the sort of permanent no-contact order at issue here. It provides that "[i]f a defendant is convicted of, receives a deferred judgment for, or pleads guilty to" certain specified crimes—including violation of the harassment statute,[1] as here—the district court "shall either terminate or modify the temporary no-contact order issued by the magistrate," and the court "may enter a no-contact order or continue the no-contact order already in effect for a period of five years from the date the judgment is entered." *Id.*

Finally, Iowa Code section 664A.8 authorizes extensions of a permanent no-contact order. By its express terms, though, section 664A.8 precludes an extension if "the court finds that the defendant no longer poses a threat to the safety of the victim, persons residing with the victim, or members of the victim's family." *Id.* In *Vance v. Iowa District Court*, we clarified how this process should work. 907 N.W.2d 473, 481–83 (Iowa 2018). For one thing, we clarified that the defendant bears the burden of proving that he or she no longer poses a threat to the protected parties. *Id.*; *see also State v. Petro*, 981 N.W.2d 686, 691 (Iowa 2022) (discussing *Vance*). We also clarified that the same burden of proof we use for civil injunctions—the preponderance of the evidence—applies for section 664A.8 proceedings. *Vance*, 907 N.W.2d at 482. Thus, if the defendant proves by a preponderance of the evidence that he or she no longer poses a threat to the protected persons, the court should not extend the no-contact order under section 664A.8. *Id.*

---

[1]Iowa Code section 664A.5 incorporates the crimes identified in section 664A.2(1), which—in turn—specifically references section 708.7. Note that section 664A.5 also authorizes entry of a no-contact order at other stages in the proceeding.

b. *Hall's contentions.* With this background in mind, we turn to Hall's arguments about Iowa Code section 664A.5. Hall notes that because section 664A.5 says that district courts "*may* enter a no-contact order or continue the no-contact order already in effect for a period of five years," the statute provides some element of discretion. *Id.* (emphasis added). Hall then proposes various ways in which that discretion should be limited. For instance, Hall suggests that just as *Vance* used certain civil law concepts to interpret section 664A.8, we should import civil-injunction standards into section 664A.5. And so, Hall argues, if the State fails to prove the necessary elements for a civil injunction—such as undue hardship and lack of adequate legal remedy—then section 664A.5 does not authorize a permanent no-contact order. Moreover, Hall contends, if the court *does* issue a permanent no-contact order under section 664A.5, the court must explain its reasons on the record. All of this is required by due process, Hall suggests.

We reject Hall's arguments. Interestingly, the very same arguments were recently presented to—and rejected by—our court of appeals in *State v. Hunter*, No. 24–1999, 2026 WL 892487 (Iowa Ct. App. Apr. 1, 2026). As the *Hunter* court properly recognized, section 664A.5 is not like section 664A.8. *Id.* at *2. While section 664A.8 *expressly* contemplates that the court may need to make fact-intensive inquiries into the particular circumstances of defendants and protected parties, nothing in 664A.5 requires that sort of approach. *See id.* Rather, as the *Hunter* court properly noted, "the only condition precedent in section 664A.5 is a conviction, deferred judgment, [or] guilty plea" for a qualifying crime.[2] *Id.* If that condition is fulfilled, then the district court is statutorily authorized to either

---

[2]We have focused on criminal-law triggers to the entry of a section 664A.5 no-contact order. However, as the *Hunter* court properly noted, some findings of contempt can also trigger the entry of such an order. 2026 WL 892487, at *2.

"enter a no-contact order" for a five-year period "or continue the no-contact order already in effect for a period of five years." *Rasmussen*, 7 N.W.3d at 365 (quoting Iowa Code section 664A.5 (2021)). The court is not required to consider additional proof, make additional findings, or offer additional explanations. *See Lynch*, 2021 WL 2453362, at \*4 (stating that there is no need for special findings to enter a no-contact order under section 664A.5).

We have not overlooked Hall's concerns about due process. But Hall does not cite, and we have not found, authorities suggesting that due process is offended when a sentencing court enters a five-year no-contact order in response to a criminal conviction of harassment. Also, due process is usually satisfied by notice and opportunity to be heard. *See State v. Hightower*, 8 N.W.3d 527, 539 (Iowa 2024). We see no reason to think that Hall was deprived of either.

**IV. Resolution.**

Hall has not shown reversible error. So we affirm.

**Affirmed.**